UPON REHEARING EN BANC
HUMPHREYS, Judge.
Delio Anzualda, Jr. appeals his convictions, following a conditional plea of guilty, for one count of possession of cocaine with intent to distribute, in violation of Code § 18.2-248, one count of possession of marijuana with intent to distribute, in violation of Code § 18.2-248.1, and one count of possession of a firearm while in possession of cocaine, in violation of Code § 18.2-308.4.[1] Anzualda argues on appeal that the trial court erred in denying his motion to suppress evidence seized pursuant to a search warrant, contending that the warrant was not supported by probable case and additionally failed to meet the requirements of the good faith exception to the exclusionary rule set forth in United States v. *771 Leon, 468 U.S. 897, 104 S.Ct. 3405 (1984). For the reasons that follow, we hold that the trial court did not err and, therefore, affirm the judgment of the trial court.
I. Background
In accord with settled principles of appellate review, on appeal of the denial of a motion to suppress, we review the evidence and all reasonable inferences fairly deducible from that evidence in the light most favorable to the Commonwealth, the party prevailing below. Sabo v. Commonwealth, 38 Va.App. 63, 69, 561 S.E.2d 761, 764 (2002); Shaver v. Commonwealth, 30 Va.App. 789, 794, 520 S.E.2d 393, 396 (1999).
So viewed, the evidence here establishes that, on September 15, 2000, Officer David Doughty, an investigator with the Northampton County Sheriffs Office, executed a search warrant at Anzualda’s home. The warrant was based on an affidavit sworn to by Doughty on the same day. The affidavit stated the “material facts constituting probable cause” for the search as follows:
On March 17, 2000, Carlos Tolentito and Hildeberto Velasco were shot to death with 9 millimeter rounds on Occohannock Neck Road. An individual incarcerated in the Northampton County Jail has become a suspect in the offense in that he has made incriminating statements to at least three persons. An intimate friend of the suspect has informed the undersigned that the suspect informed the intimate friend that he had traded a pistol to an individual named as “Cowboy” for marijuana, “Cowboy” being known to her as residing at the place to be searched. The undersigned has personal knowledge that “Cowboy” is Delio Anzualda.
The affidavit described the “thing to be searched for” as a “9 millimeter pistol and/or ammunition,” and the place to be searched as the:
dwelling house (single-wide trailer), outbuildings, motor vehicles and any other structures or containers on the property located at 9182 Franktown Road, Franktown, Va----The property is occupied by Delio Anzualda and family.
*772 While searching Anzualda’s home, Doughty and his fellow officers found several items that they suspected were stolen. They also discovered cocaine and related paraphernalia, marijuana, and several firearms. However, a pistol was not among the items seized.
After Officer Doughty arrested Anzualda, Anzualda made several incriminating statements relating to the drugs and other items discovered during the search. A grand jury subsequently indicted Anzualda on several charges, including possession of cocaine with intent to distribute, possession of marijuana with intent to distribute, and possession of a firearm while in possession of cocaine.
Before a trial on the merits, Anzualda filed a motion to suppress the evidence seized from his home, contending that both the evidence and his resulting statements were obtained in violation of the “Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States, Article 1, Section 10 of the Constitution of Virginia.” At the hearing on the motion to suppress, Anzualda argued specifically that the evidence and statements should be suppressed because the affidavit, upon which the warrant was based, failed to “set sufficient facts on its face to cause a reasonably detached magistrate to believe that the subject matter of the search for a pistol was at [Anzualda’s] home,” reasoning that the affidavit failed to provide a sufficient nexus between the item sought and the place to be searched. Anzualda further argued that, because the affidavit alleged that the murders occurred on March 17, 2000, but the warrant was not issued until September 15, 2000, “there [was] no way to conclude that the evidence [police] want[ed] to seize or look for [was] at [Anzualda’s] residence.”[2] The trial court denied the motion to suppress, reasoning that, even if the warrant was not supported by *773 probable cause, the evidence was admissible under the Leon exception to the exclusionary rule, which permits the introduction of evidence seized in good faith reliance on a defective search warrant.
Anzualda subsequently entered a conditional plea of guilty to each of the drug-related charges. On appeal, a divided panel of this Court reversed the judgment of the trial court and remanded the case for a new trial. See Anzualda v. Commonwealth, 42 Va.App. 481, 592 S.E.2d 761 (2004). We granted the Commonwealth’s petition for en banc review, stayed the mandate of the panel decision, and reinstated the appeal. Upon rehearing en banc, we affirm the judgment of the trial court and reinstate Anzualda’s conviction.
II. Analysis
Anzualda contends the trial court erred in denying his motion to suppress for two reasons. First, Anzualda argues that the search warrant was defective because it was not based upon probable cause, reasoning that the underlying affidavit “lack[ed] specificity with respect to the time between the communication of the information, and the issuance thereof.” Second, Anzualda argues the warrant cannot be “saved” under the good faith exception because it was “so lacking in the indicia of probable cause as to be fatally defective on its face.” Specifically, Anzualda contends that the affidavit failed to set forth “any” facts establishing a connection between “the premises to be searched, and a reasonable belief that the evidence to be seized would be located on the premises.”
We begin by noting that, although “ ‘[w]e are bound by the trial court’s findings of historical fact unless ‘plainly wrong’ or without evidence to support them,’ ... we review de novo the trial court’s application of legal standards ... to the particular facts of the case.” McCracken v. Commonwealth, 39 Va.App. 254, 258, 572 S.E.2d 493, 495 (2002) (en banc) (quoting McGee v. Commonwealth, 25 Va.App. 193, 198, 487 S.E.2d 259, 261 (1997) (en banc)) (citing Ornelas v. United States, 517 U.S. 690, 699, 116 S.Ct. 1657, 1663, 134 L.Ed.2d *774 911 (1996)). Further, “[i]n reviewing a trial court’s denial of a motion to suppress, ‘the burden is upon [the appellant] to show that the ruling ... constituted reversible error.’ ” McGee, 25 Va.App. at 197, 487 S.E.2d at 261 (quoting Fore v. Commonwealth, 220 Va. 1007, 1010, 265 S.E.2d 729, 731 (1980)).
A. Whether the Warrant Was Supported by Probable Cause[3]
Generally, “ ‘[t]he existence of probable cause is determined by examining the totality-of-the-circumstances.’ ” Janis v. Commonwealth, 22 Va.App. 646, 651-52, 472 S.E.2d 649, 652 (quoting Miles v. Commonwealth, 13 Va.App. 64, 68, 408 S.E.2d 602, 604 (1991)), aff'd en banc, 23 Va.App. 696, 479 S.E.2d 534 (1996). Accordingly, “[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the *775 affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.” Illinois v. Gates, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983) (citation omitted); see also Tart v. Commonwealth, 17 Va.App. 384, 387, 437 S.E.2d 219, 221 (1993) (“The initial determination of probable cause requires the magistrate to weigh the evidence presented in light of the totality of the circumstances.”). When determining whether probable cause exists, the magistrate may draw reasonable inferences from the material supplied to him. Williams v. Commonwealth, 4 Va.App. 53, 68, 354 S.E.2d 79, 87 (1987).
However, “[i]t is well settled ‘that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review.’ ” Tart, 17 Va.App. at 388, 437 S.E.2d at 221 (quoting Gates, 462 U.S. at 236, 103 S.Ct. at 2331) . Rather, “ ‘the duty of the reviewing court is simply to ensure that the magistrate had a substantial basis for ... conclud[ing] that probable cause existed.’ ” Id. at 387, 437 S.E.2d at 221 (quoting Gates, 462 U.S. at 238-39, 103 S.Ct. at 2332) (alterations in original) (internal quotations omitted); see also Janis, 22 Va.App. at 652, 472 S.E.2d at 652. This deferential standard of review “ ‘is appropriate to further the Fourth Amendment’s strong preference for searches conducted pursuant to a warrant.’ ” Tart, 17 Va.App. at 388, 437 S.E.2d at 221 (quoting Williams, 4 Va.App. at 68, 354 S.E.2d at 87); see also Leon, 468 U.S. at 914, 104 S.Ct. at 3416 (“Reasonable minds frequently may differ on the question whether a particular affidavit- establishes probable case, and we have thus concluded that the preference for warrants is most appropriately effectuated by according ‘great deference’ to a magistrate’s determination.”).
Anzualda argues that, considering all of the circumstances of this case, the information set forth in the affidavit was insufficient to provide the magistrate with a “substantial basis” for finding probable cause to believe that the pistol sought would be found in Anzualda’s home. We agree.
*776 Initially, the warrant, which was issued on September 26, 2000, provides no time frame as to when the murder suspect made the incriminating statements to the confidential informants, nor does it indicate when the alleged marijuana-for-pistol trade occurred. The warrant also fails to indicate when the suspect was incarcerated, and it provides no facts from which the magistrate could have inferred that the alleged trade did, in fact, take place after the murders and before the suspect’s incarceration. The only date contained in the warrant merely gives the date on which the murders occurred— March 17, 2000 — some six months earlier.
Generally, “[t]here is no fixed standard or formula establishing a maximum allowable interval between the date of events recited in an affidavit and the date of a search warrant.” Johnson v. Commonwealth, 259 Va. 654, 671, 529 S.E.2d 769, 778 (2000). “Instead, a warrant will be tested for ‘staleness’ by considering whether the facts alleged in the warrant provided probable cause to believe, at the time the search actually was conducted, that the search conducted pursuant to the warrant would lead to the discovery of evidence of criminal activity.” Id.; see also Sgro v. United States, 287 U.S. 206, 210, 53 S.Ct. 138, 140, 77 L.Ed. 260 (1932); United States v. McCall, 740 F.2d 1331, 1336 (4th Cir.1984); Huff v. Commonwealth, 213 Va. 710, 715-16, 194 S.E.2d 690, 695 (1973); Perez v. Commonwealth, 25 Va.App. 137, 142-43, 486 S.E.2d 578, 581-82 (1997). As we have noted:
“ ‘The vitality of probable cause cannot be quantified by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit.’ United States v. Johnson, 461 F.2d 285, 287 (10th Cir.1972). Rather, we must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized. Id.”
Perez, 25 Va.App. at 142, 486 S.E.2d at 581 (quoting McCall, 740 F.2d at 1336).
*777 Thus, although a six-month lapse, standing alone, would not necessarily compel a finding that a search warrant was not supported by probable cause, we are troubled by this particular warrant’s failure to identify any dates other than that of the murders. Absent any reference to the dates on which the described activities allegedly occurred, it is next-to-impossible to determine whether the information supporting this warrant is recent enough to establish a “fair probability” that the pistol might be found at Anzualda’s home. Because the officer failed to provide any sort of a temporal context for the events described, the magistrate did not have a “substantial basis” for concluding that there was probable cause to issue the warrant.
Moreover, we agree that the information provided in the warrant fails to provide a sufficient nexus between the item sought (the pistol) and the premises to be searched. At most, the warrant indicates that: (1) six months earlier, two individuals had been murdered with a pistol; (2) a prison inmate informed three people that he had committed the murders; (3) a Mend of the inmate informed the police that the inmate had traded a pistol to “Cowboy” in return for marijuana; (4) “Cowboy” is Anzualda; and (5) Anzualda lived at the premises to be searched.
Based on these facts, the magistrate could have inferred that Anzualda might have had a pistol that might have been given to him by the murder suspect. However, “[t]he critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is [probable] cause to believe that the specific ‘things’ to be searched for and seized are located on the property to which entry is sought.” Zurcher v. Stanford Daily, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976-77, 56 L.Ed.2d 525 (1978). Noticeably absent from this affidavit are any facts that would have permitted the magistrate to infer not only that Anzualda had a pistol, but that he was keeping that pistol at his home. Although it is generally true that, “in the ease of drug dealers, evidence is likely to be found where the dealers live,” United *778 States v. Angulo-Lopez, 791 F.2d 1394, 1399 (9th Cir.1986), this affidavit does not provide any facts supporting the inference that Anzualda was, in fact, a known drug dealer.[4] The affidavit describes but a single drug transaction, which could have been an isolated transaction just as readily as it could have been part of a larger scheme. The affidavit similarly contains no assertion that persons involved in drug transactions tend to keep the fruits of those transactions in their home. Nor does the affidavit indicate that a pistol had been observed in either Anzualda’s possession or in his home.
Although the magistrate is entitled to draw reasonable inferences from the facts set forth in the affidavit, suppositions and guesswork cannot equate to a “substantial basis” for concluding that there is a “fair probability” that the item sought will be found at the place to be searched. Thus, although the facts listed in the affidavit do provide some basis for believing that the pistol might be at Anzualda’s home, this nexus is too tenuous to support a finding of probable cause. See Janis, 22 Va.App. at 652, 472 S.E.2d at 652 (holding that the magistrate “lacked a substantial basis for finding that probable cause existed” because “[t]he affidavit, while not a ‘bare bones’ affidavit, failed to provide a ‘nexus’ that linked the [item sought] to [the place searched]”); cf. United States v. Kenney, 595 F.Supp. 1453, 1461 (D.Me.1984) (“[W]ithout more *779 than merely the statement in the affidavit that [the defendant] has committed a drug offense, the Court cannot find that there was adequate probable cause to search his house.”).
Accordingly, despite the deference we must pay to the magistrate’s determination of probable cause, we hold that the magistrate here lacked a “substantial basis” for finding that the facts set forth in the affidavit established probable cause. See Leon, 468 U.S. at 915, 104 S.Ct. at 3416-17 (“Even if the warrant application was supported by more than a ‘bare bones’ affidavit, a reviewing court may properly conclude that, notwithstanding the deference that magistrates deserve, the warrant was invalid because the magistrate’s probable-cause determination reflected an improper analysis of the circumstances .... ”).
B. Application of the Good Faith Exception
Our conclusion that the search warrant was not supported by probable cause does not, however, end our inquiry into whether the trial court should have granted Anzualda’s motion to suppress. Generally, “[w]here law enforcement officers illegally search private premises or seize property without probable cause ... the illegally seized evidence will be excluded____” Colaw v. Commonwealth, 32 Va.App. 806, 810, 531 S.E.2d 31, 33 (2000) (citing Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691-92, 6 L.Ed.2d 1081 (1961)). The exclusionary rule, created with the intent of deterring police misconduct, “operates ‘as a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than [to protect] a personal constitutional right of the party accused.’ ” Leon, 468 U.S. at 906, 104 S.Ct. at 3412 (quoting United States v. Calandra, 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)); see also Derr v. Commonwealth, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991); Colaw, 32 Va.App. at 810, 531 S.E.2d at 33. However, because “[t]he deterrent effect of the exclusionary rule ‘is absent where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the warrant,’ ” Janis, 22 Va.App. at *780 653, 472 S.E.2d at 653 (quoting Derr, 242 Va. at 422, 410 S.E.2d at 667), evidence seized pursuant to an invalid search warrant “is nevertheless admissible if the officer executing the warrant reasonably believed that the warrant was valid.” Lanier v. Commonwealth, 10 Va.App. 541, 547, 394 S.E.2d 495, 499 (1990) (citing Leon, 468 U.S. at 918-21, 104 S.Ct. at 3418-19); see also Atkins v. Commonwealth, 9 Va.App. 462, 464, 389 S.E.2d 179, 180 (1990).
Under the “good faith” exception, then, “[w]here a police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate’s probable cause determination and the evidence will not be excluded, even though the affidavit may not have provided the magistrate ... with probable cause to issue the warrant.” Colaw, 32 Va.App. at 810-11, 531 S.E.2d at 33. In this case, although we have determined that the underlying affidavit did not provide the magistrate with probable cause to issue the warrant, there is no evidence that Officer Doughty acted other than in good faith and with a reasonable belief that the warrant was valid. See United States v. Merritt, 361 F.3d 1005, 1013 (7th Cir.2004) (observing that the officer’s “decision to obtain a warrant is prima facie evidence of good faith”).
There are, however, four recognized situations in which the good faith exception will not be applied, specifically:
(1) Where the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit “so lacking in indicia of probable cause” as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.
Colaw, 32 Va.App. at 811, 531 S.E.2d at 33 (citing Atkins, 9 Va.App. at 464, 389 S.E.2d at 180); see also Robinson v. Commonwealth, 19 Va.App. 642, 647, 453 S.E.2d 916, 918 (1995). Here, Anzualda argues that the third exception to the *781 good faith rule applies, contending that the underlying affidavit was so lacking in indicia of probable cause that a reasonable police officer would not have believed that the warrant was valid.
As discussed above, the magistrate in this case lacked a “substantial basis” for determining that there was probable cause to issue the warrant. The absence of a “substantial basis,” however, does not necessarily mean that the affidavit was so entirely lacking of indicia of probable cause that a police officer could not have harbored an objectively reasonable belief in the validity of the warrant. In other words, “no substantial basis” does not automatically equate to “no indicia of probable cause.” As aptly noted by the Fourth Circuit,
“Substantial basis” provides the measure for determination of whether probable cause exists in the first instance. If a lack of a substantial basis also prevented application of the Leon objective good faith exception, the exception would be devoid of substance. In fact, Leon states that the third [exception to the good faith rule] prevents a finding of objective faith only when an officer’s affidavit is “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” Leon, 468 U.S. at 923, 104 S.Ct. at 3421 (citation omitted). This is a less demanding showing than the “substantial basis” threshold required to prove the existence of probable cause in the first place.
United States v. Bynum, 293 F.3d 192, 195 (4th Cir.2002) (citation omitted). “Thus, it is entirely possible that an affidavit could be insufficient for probable cause but sufficient for ‘good-faith’ reliance.” United States v. Washington, 380 F.3d 236, 241 (6th Cir.2004). Hence, as long as there is some indicia of probable cause in the underlying affidavit, we will apply the good faith exception as long as a reasonable police officer, after assessing the facts set forth in the affidavit, could have believed that the warrant was valid.
Here, we find that the underlying affidavit does contain some indicia of probable cause. The underlying affidavit *782 is not a “bare-bones” affidavit that merely sets forth conclusory allegations with no recitation of the facts supporting those conclusions. See Colaw, 32 Va.App. at 813, 531 S.E.2d at 34 (“A police officer could not reasonably have believed that the warrant was properly issued when it was based on a ‘bare bones’ affidavit that contained only conclusory assertions by a third-party informant about a future event without supporting facts to constitute probable cause.”); see also United States v. Weaver, 99 F.3d 1372, 1378 (6th Cir.1996) (“An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge, is a ‘bare bones’ affidavit.”). Rather, the underlying affidavit describes with particularity the item sought, the place to be searched, and the transaction that led the police to believe that the item sought would have been found at the place to be searched. See Atkins, 9 Va.App. at 464, 389 S.E.2d at 179 (finding evidence admissible under good faith exception where the affidavit had sufficient indicia of probable cause, specifically, it “contained a detailed description of the nature of the offense, the premises to be searched, the items for which they were searching, and the transaction which led the informant to believe that the drugs would be in this apartment”).
As noted above, the underlying affidavit does fail to list the dates on which the described events allegedly occurred. But a reasonable police officer would not necessarily have concluded that the warrant was invalid merely because the affidavit failed to specifically identify the dates on which the described activities occurred. “ ‘In the ordinary case, an officer cannot be expected to question the magistrate’s probable cause determination or his judgment that the form of the warrant is technically sufficient.’ ” Tart, 17 Va.App. at 390, 437 S.E.2d at 222 (quoting Leon, 468 U.S. at 921, 104 S.Ct. at 3419). Here, a reasonable police officer, after reading the affidavit, would have concluded that the events described occurred within the previous six months. It was not unreasonable for the officer to have also concluded that the pistol, obtained sometime within the preceding six months, could still *783 be in Anzualda’s possession. Cf. 2 Wayne R. LaFave, Search and Seizure § 3.7(d) (3d ed. 1996) (“Where the object of the search is a weapon used in [a] crime ... the inference that the item[ ] [is] at the offender’s residence is especially compelling, at least in those cases where the perpetrator is unaware that ... [he] has been ... identified] ... [by] the police.”).[5] Thus, the affidavit’s failure to identify the specific dates upon which the described events occurred does not, as the dissent asserts, render the affidavit so lacking in probable cause that a reasonable police officer could not have concluded that it was valid. See, e.g., United States v. Anderson, 851 F.2d 727, 729-30 (4th Cir.1988) (where defendant allegedly possessed a gun suspected to have been used in an unrelated murder, court applied the good faith exception to admit the gun and silencer *784 seized from defendant’s residence, noting that even though the court was “troubled by the fact that there is no disclosure in the warrant, or in the affidavit, of either the date of the crime or the date upon which the defendant had offered to sell the pistol to the informants[,] ... [t]here was no dispute over whether the magistrate or the investigator acted in good faith”).
As discussed above, the underlying affidavit also failed to provide a sufficient nexus between the item sought and the premises searched. This does not mean, however, that the affidavit failed to provide any nexus between the pistol and Anzualda’s residence. The facts listed in the affidavit indicate that Anzualda had obtained a pistol from a murder suspect. The affidavit also indicates that Anzualda resided at the premises to be searched. And, because a reasonable police officer could also infer that Anzualda was keeping the pistol at his home, the affidavit does establish a nexus — however slight — between the item sought and the premises to be searched. See, e.g., United States v. Maneti, 781 F.Supp. 169, 177 (W.D.N.Y.1991) (“In the case of firearms ... [it is] reasonable [to] infer[ ] [that] ... one would likely keep such evidence [ ] at home.”).
Anzualda, however, argues that our decision in Janis mandates a finding that, because there was an insufficient nexus between the pistol and the premises searched, the affidavit was so lacking in probable cause that a reasonable police officer would have known that the warrant was invalid. In Janis, we declined to apply the good faith exception where the underlying affidavit described certain criminal activities and provided an address to be searched, but failed to indicate why that address was being searched (e.g., because one of the suspects resided at or was otherwise connected to that address). See 22 Va.App. at 652, 472 S.E.2d at 653. Because the officer “might just as easily have supplied the magistrate with an address belonging to an unrelated third party,” we concluded that “[t]he affidavit gave absolutely no indication that the fruits of criminal activity would probably be found at that location, rendering [the officer’s] belief in probable case, *785 based solely on the affidavit, objectively unreasonable.” Id. at 652-53, 472 S.E.2d at 653.
In Janis, then, we did not hold that the failure to establish a sufficient nexus between the item sought and the premises to be searched automatically precluded application of the good faith exception. Rather, we held that, where the underlying affidavit failed to provide any connection whatsoever between the alleged criminal activity and the premises to be searched, that affidavit was so lacking in indicia of probable cause that a reasonable police officer could not have harbored an objectively reasonable belief as to the validity of the warrant.[6]
Janis, therefore, is factually distinguishable from the present case. Unlike the affidavit in Janis, which contained no information connecting the criminal activity to the premises to be searched, the affidavit here did establish a nexus (albeit an insufficient nexus for a finding of probable cause) between the pistol and the premises to be searched. Specifically, the affidavit at issue in this case states that Anzualda was “known to [the confidential informant] as residing at the place to be *786 searched,” and additionally indicated that the address to be searched “is occupied by Delio Anzualda and family.” The affidavit also indicates that a murder suspect had traded a pistol to Anzualda in exchange for marijuana. It is therefore apparent on the face of the affidavit that the premises were to be searched because Anzualda, the person presumably in possession of the pistol, resided there. Accordingly, the vital link that was missing in Janis is present here: the affidavit clearly connected Anzualda to the pistol and connected Anzualda to the place to be searched.
United States v. Carpenter, 360 F.3d 591 (6th Cir.), cert. denied, — U.S.-, 125 S.Ct. 261, 160 L.Ed.2d 84 (2004), a recent case from the Sixth Circuit, is also instructive. In Carpenter, the court concluded that the magistrate did not have a “substantial basis” for a finding of probable cause because the facts contained in the underlying affidavit “were too vague, generalized, and insubstantial” to establish a sufficient nexus between the place to be searched and the evidence sought. Id. at 595. The court, however, admitted the seized evidence under the good faith exception, reasoning that “the affidavit was not completely devoid of any nexus between the residence and the [item sought].” Id. at 595-96. Noting that “the affidavit was not totally lacking in facts connecting the residence to the [item sought],” the court concluded that “the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer’s good-faith belief in the warrant’s validity,” despite the fact that these facts “were too vague to provide a substantial basis for the determination of probable cause.” Id. at 596.
Similarly, here, the affidavit did provide some facts linking the pistol to the premises to be searched, and these facts “were not so vague as to be conclusory or meaningless.” Id. Thus, we hold that the affidavit was not so lacking in indicia of probable cause that a reasonable police officer would not have believed that it was valid. Cf. United States v. Beckett, 321 F.3d 26, 32 (1st Cir.2003) (holding that, although the affidavit’s “support of a nexus between evidence of the murders and [the defendant’s] residence is less than overwhelming^] ... the *787 affidavit established the nexus element sufficiently to pass muster under Leon”); United States v. Loy, 191 F.3d 360, 368-69 (3d Cir.1999) (holding that, although the affidavit failed to provide sufficient facts to establish the “requisite nexus between the item to be seized and the place to be searched,” the warrant was not “so facially deficient or lacking in indicia of probable cause that a reasonably well trained officer would have known that the search was illegal despite the magistrate judge’s authorization”).[7]
III. Conclusion
In Leon, the United States Supreme Court recognized a constitutional preference that police officers seek search warrants from neutral and detached magistrates, holding that “suppression of evidence obtained pursuant to a warrant [issued by a magistrate] should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.” Leon, 468 U.S. at 918, 104 S.Ct. at 3418; see also Massachusetts v. Sheppard, 468 U.S. 981, 987-88, 104 S.Ct. 3424, 3427-28, 82 L.Ed.2d 737 (1984). This is not one of those “unusual cases.” Rather, “[although certainly not a thing of beauty, the affida *788 vit is not so lacking in ‘indicia of probable cause’ as to render objectively reasonable good faith in a warrant issued pursuant to it impossible.” United States v. Craig, 861 F.2d 818, 822 (5th Cir.1988). Because the officer possessed an objectively reasonable belief in the existence of probable cause — namely, that “the fruits of criminal activity would probably be found at” the place to be searched, Janis, 22 Va.App. at 653, 472 S.E.2d at 653 — we hold that the trial court did not err in admitting the seized evidence under the good faith exception to the exclusionary rule. The judgment of the trial court is, therefore, affirmed.

Affirmed.

. In addition to these charges, Anzualda was charged with five counts of receiving stolen goods valued at $200 or more, in violation of Code § 18.2-108. However, the disposition of those charges is not at issue on this appeal.

. In the alternative, Anzualda argued that his statements should be suppressed because Anzualda, who is Hispanic, could not sufficiently understand the officers and, therefore, could not freely and voluntarily waive his rights. After hearing evidence submitted by the parties, the trial court denied Anzualda’s motion on this basis. Anzualda has not appealed that portion of the trial court's ruling.

. We recognize, as the concurrence has noted, that courts both within this Commonwealth and elsewhere will frequently bypass the issue of probable cause and proceed directly to the question of whether the good faith exception applies. However, we also believe that consistently sidestepping the issue of probable cause in favor of applying the good faith exception will inevitably permit the exception to swallow the rule. Moreover, we disagree with the concurrence’s belief that the probable cause issue should be addressed only if the circumstances present a "novel question of law.” As the Supreme Court expressly noted in Leon itself, "[e]ven if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers’ good faith only after finding a violation." Leon, 468 U.S. at 925, 104 S.Ct. at 3422 (emphasis added). Further, "it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue.” Id.
Here, the concurrence suggests that we should avoid any discussion of whether the magistrate had a "substantial basis” for concluding that probable cause existed. However, if we repeatedly fail to address the threshold question of probable cause, we will continue to neglect our duty to adequately educate our magistrates and to provide them with discrete legal guidelines, concomitantly reducing their role in the issuance of warrants to little more than that of a rubber-stamp. Considering the dearth of recent Virginia caselaw on this specific question, and mindful of the fact that we are issuing this opinion en banc, we elect to substantively address the question.

. Cf. United States v. Payne, 341 F.3d 393, 401 (5th Cir.2003) (noting that “few places are more convenient than one’s residence for use in planning criminal activities and hiding fruits of a crime,” and holding that, “[although this notion does not provide carte blanche for searching a home when one is suspected of illegal activity, the inference before us requires no such unfettered discretion” (internal quotations and citation omitted)); United States v. Feliz, 182 F.3d 82, 87-88 (1st Cir.1999) (upholding magistrate’s determination of probable cause where the defendant was "a long-time, successful, drug trafficker,” the affidavit "indicated that [the defendant] resided in [the place to be searched],” and "[n]o other residence or drug-dealing headquarters ... [were] identified in the affidavit," concluding that ”[i]t followed that a likely place to seek to find incriminating items would be [the defendant’s] residence”); United States v. Williams, 974 F.2d 480, 482 (4th Cir.1992) (per curiam) (upholding determination of probable cause to search for drug paraphernalia in motel room based on affidavit establishing that known drug dealer currently resided in the motel room).

. We note that, in Leon itself, the warrant lacked probable cause because the information provided by the informant was six-months old and, therefore, "fatally stale.” 468 U.S. at 904-05, 104 S.Ct. at 3410-11. Despite the staleness of the information, the Supreme Court concluded that "the officers’ reliance on the magistrate’s determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate.” Id. at 926, 104 S.Ct. at 3422.
Other jurisdictions, after concluding that a warrant was not supported by probable cause because the information contained in the underlying affidavit was stale, have also been willing to admit evidence under the good faith exception. See, e.g.. United States v. Beckett, 321 F.3d 26, 33 (1st Cir.2003) (concluding that good faith exception applied to admit evidence recovered during a search for a murder weapon despite a "six-year lag between the [] murder and the search”); United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars & Fifty-Seven Cents, 307 F.3d 137, 148 (3d Cir.2002) (rejecting defendant’s "argument that [an] 11-month gap rendered the information in the affidavit so clearly stale that reasonable officers could not have believed that the warrant was valid”); United States v. White, 883 F.Supp. 766, 773-74 (D.Me.1995) (admitting evidence under good faith exception where the most recent information contained in the warrant was at least two years old, noting that, "[although the magistrate judge erred in issuing a warrant upon affidavits that did not contain current information^] ... such defects are not of the kind which would alert an executing officer” because the officer would not necessarily "be expected to note the particular time frame of the many facts alleged”); see also Bynum, 293 F.3d 192 (three-month gap); United States v. Rugh, 968 F.2d 750 (8th Cir.1992) (sixteen-month gap); United States v. Kleinebreil, 966 F.2d 945 (5th Cir.1992) (one-year gap).

. We further note that United States v. Hove, 848 F.2d 137 (9th Cir. 1988), the case we principally relied upon in Janis, has been similarly distinguished within its own jurisdiction. In United States v. Ramos, 923 F.2d 1346 (9th Cir.1991), overruled on other grounds by United States v. Ruiz, 257 F.3d 1030 (9th Cir.2001), for example, the Ninth Circuit held that a warrant was not supported by probable cause because it "failed to show a nexus between the criminal activity and the places to be searched.” Id. at 1351. The Ramos court, however, applied the good faith exception to admit the evidence seized pursuant to the warrant. Id. at 1354-55. The Ramos court distinguished Hove by noting that, "[i]n contrast to the situation presented in Hove, here the affidavit supporting the warrant clearly linked [the premises] to the criminal enterprise observed by the officers,” concluding that, "[w]hile the affidavit supporting the [] search warrant may not have been the model of thoroughness, it cannot be said that the document ‘d[id] not link this location to the defendant.' ” Id. at 1354 (quoting Hove, 848 F.2d at 140) (second alteration in original). Similarly, in United States v. Fowlie, 24 F.3d 1059 (9th Cir.1994), the Ninth Circuit held that an affidavit met "the minimal requirements of the good faith exception” because it provided a connection between the defendant and the property to be searched. Id. at 1067. The Fowlie court distinguished Hove by noting that the affidavit in Hove "merely listed the address of the residence without ... giving any facts in support of a conclusion that evidence or contraband would probably be found there.” Id.

. See also United States v. Washington, 380 F.3d 236, 243 (6th Cir.2004) (assuming, without deciding, that there was no "sufficient basis” for a finding of probable cause because the affidavit failed to provide a sufficient nexus between the criminal activity observed and the premises searched, but holding that the seized evidence was admissible under the good faith exception because "the affidavit included enough facts with respect to the nexus between the criminal activity and the [premises searched] to overcome the 'so lacking’ hurdle”); United States v. Feliz, 20 F.Supp.2d 97, 105-06 (D.Me.1998) (applying good faith exception despite finding the underlying affidavit insufficient to establish a nexus between the targeted evidence and the premises searched), aff'd, 182 F.3d 82 (1st Cir.1999); United States v. Rosario, 918 F.Supp. 524, 529-30, 532 (D.R.I.1996) (finding that, although the underlying affidavit "lack[ed] any material nexus between [the defendant's] illicit activity and the [premises searched],” the seized evidence was admissible under the good faith exception, reasoning that the affidavit "clearly reflected that [the defendant] was involved with persons associated with illicit narcotics sales” and that the defendant "was involved in at least one verified narcotics sale,” rendering the officer’s belief in the validity of the warrant objectively reasonable).