ELDER, J.,
dissenting.
I believe the majority strains by attempting, sua sponte, to rehabilitate a search warrant deficient in probable cause with reference to information contained in a related criminal complaint. I would hold the affidavit and warrant were so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, even when considered in light of the contents of the criminal complaint. Thus, I would hold the good faith exception to the Fourth Amendment’s exclusionary rule does not apply, rendering the search of the residence of Germaine Delano Adams (appellant), conducted pursuant to an invalid warrant, unreasonable under the facts of this case. Therefore, I conclude the trial court’s refusal to suppress the fruits of that search was reversible error. Because the evidence challenged as hearsay was relevant only as a result of an item, a shoulder holster, found during the *755 unreasonable search, I would hold that this issue is moot and that we need not consider it in this appeal. Finally, because I believe the trial court’s denial of the motion to suppress was erroneous and cannot be said to be harmless on the facts of this case, I would reverse appellant’s convictions and remand for a new trial. Thus, I respectfully dissent.
I.
An appellant’s claim that evidence was seized in violation of the Fourth Amendment “presents a mixed question of law and fact that we review de novo on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment.” Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002) (citations omitted); see also Ornelas v. United States, 517 U.S. 690, 691, 699, 116 S.Ct. 1657, 1659, 1663, 134 L.Ed.2d 911, 916, 920 (1996).
In order to meet the Fourth Amendment’s probable cause standard, the facts set forth in an affidavit given to support the issuance of a search warrant must establish a nexus between the place to be searched and the criminal activity or evidence in question. Janis v. Commonwealth, 22 Va.App. 646, 652, 472 S.E.2d 649, 652, aff'd on reh’g en banc, 23 Va.App. 696, 479 S.E.2d 534 (1996). The affidavit must, at a minimum, “explain the significance or relevance of searching [the] particular location.” United States v. Hove, 848 F.2d 137, 139 (9th Cir.1988), cited with approval in Janis, 22 Va.App. at 652, 472 S.E.2d at 652-53. The affidavit must provide a nexus for each of the items or categories of items listed in the warrant. 2 Wayne R. LaFave, Search and Seizure § 3.7(d), at 433-36 (4th ed. 2004). Absent such a nexus, “the magistrate who issued the warrant could not reasonably have concluded that [the evidence sought] would probably be found at the premises to be searched.” Janis, 22 Va.App., at 652, 472 S.E.2d at 653.
Here, the trial court ruled that the statements contained in the affidavit were insufficient to provide the nexus necessary *756 to establish probable cause for issuance of the warrant. The Commonwealth did not appeal this issue. Thus, I agree with the majority that the correctness of that part of the ruling is not before us on appeal and that we must examine only the issue of the good faith exception to the warrant requirement.
“Generally, ‘[w]here law enforcement officers illegally search private premises or seize property without probable cause ... the illegally seized evidence will be excluded. . . .' ” Anzualda v. Commonwealth, 44 Va.App. 764, 779, 607 S.E.2d 749, 756 (2005) (en banc) (quoting Colaw v. Commonwealth, 32 Va.App. 806, 810, 531 S.E.2d 31, 33 (2000)).
However, because “[t]he deterrent effect of the exclusionary rule ‘is absent where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the warrant,’ ” Janis, 22 Va.App. at 653, 472 S.E.2d at 653 (quoting Derr [v. Commonwealth, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991))], evidence seized pursuant to an invalid search warrant “is nevertheless admissible if the officer executing the warrant reasonably believed that the warrant was valid.” Lanier v. Commonwealth, 10 Va.App. 541, 547, 394 S.E.2d 495, 499 (1990).
Id. at 779-80, 607 S.E.2d at 757 (other citations omitted).
Because “ ‘[t]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates^]’ ‘[i]n the ordinary case, an officer cannot be expected to question the magistrate’s probable-cause determination or his judgment that the form of the warrant is technically sufficient,’ ” Janis, 22 Va.App. at 653, 472 S.E.2d at 653 (quoting United States v. Leon, 468 U.S. 897, 916, 921, 104 S.Ct. 3405, 3417, 3419, 82 L.Ed.2d 677, 694, 697 (1984)), and the existence of objective good faith may save the search. However, the good faith exception is unavailable when, inter alia, the “ ‘warrant [is] based on an affidavit “so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.” ’ ” Polston v. Commonwealth, 255 Va. 500, 503, 498 S.E.2d 924, 926 (1998) (quoting Leon, 468 U.S. at 923, 104 S.Ct. at 3421, 82 L.Ed.2d at 699) (citation omitted).
*757 The majority states that “[t]he affidavit alone may fail to link the place to be searched to the defendant,” but it considers, sua sponte, the contents of the criminal complaint that was submitted in support of the request for issuance of two arrest warrants for appellant, see Rules 3A:3, 3A:4, 7C:3; Rules Pt. 3A, Form 1, a document not relied upon at any stage of these proceedings by either of the parties or the trial court. It concludes that the criminal complaint, when read in conjunction with the affidavit and warrant, is sufficient to rehabilitate any deficiencies for purposes of the good faith exception. I would hold both (1) that a reasonable officer in Barker’s position could not have relied in good faith on the affidavit and search warrant and (2) that the contents of the criminal complaint do not rehabilitate the deficiencies in the affidavit and warrant.
A.
THE AFFIDAVIT AND WARRANT
I believe that the evidence of a nexus that was before the magistrate was insufficient to permit application of the good faith exception as to both (1) video and audio recordings and (2) firearms, ammunition, and any other real “evidence relating to the murder of Christopher Junior Hairston.”
Here, the only information in the affidavit purporting to provide probable cause for a search for video and audio tapes was the statement that the place to be searched “ha[d] what appeared] to be a video camera on the outside.” The affidavit indicated the residence bore no visible street number, and but for the fact that the affidavit sought authority to search for video recordings, this mention of an object resembling a video camera could have been included solely for the purpose of identifying which residence the police sought to search. The affidavit provided no explanation for why the officers believed the object that appeared to be a video camera in front of the residence at issue may have recorded something relevant to the shooting. The affidavit also provided no indication regarding whether the camera appeared to be functional or whether it could have been a non-operational camera installed solely to *758 provide the illusion of a security system. As the trial court observed, the affidavit did not indicate that the shooting occurred in front of the trailer to be searched or that the object, if it was in fact a video camera, was pointed in the direction of the shooting or the direction in which the shooter fled. The affidavit itself (i) made clear that the street contained at least two additional residences, (ii) gave no indication that the street did not contain numerous other residences, and (in) failed to indicate the length of the street. Absent evidence that any additional relevant information was presented to the magistrate, I would hold the search warrant was so lacking in indicia of probable cause as to render official belief in the existence of probable cause to search for video or audio tapes entirely unreasonable.
I would reach the same result as to the search for firearms, ammunition, and any other real “evidence relating to the murder of Christopher Junior Hairston,” based on our holding in Janis. In Janis, the challenged affidavit contained an insufficient nexus between marijuana being cultivated in Dinwiddie County and the Hopewell location for which the search warrant was issued. 22 Va.App. at 653-55, 472 S.E.2d at 653-54. The affidavit in Janis indicated that Janis was seen on property in Dinwiddie on which marijuana was being cultivated, but it gave no indication as to how Janis was linked to the place to be searched in Hopewell. Id. at 652-53, 472 S.E.2d at 653. As a result, we held that “[the officer’s] belief in probable cause, based solely on the affidavit, [was] objectively unreasonable,” and, thus, that the good faith exception did not apply “[d]espite the absence of police misconduct.” Id. at 653, 472 S.E.2d at 653.
Similarly, in appellant’s case, the affidavit contained no information whatever to explain why police believed a search of the particular residence on Virginia Oaks Court would yield firearms, ammunition, or any other real evidence relating to the murder of Christopher Junior Hairston. The affidavit failed to mention that the alleged perpetrator, who had been identified by a witness, resided there. The detailed directions to the trailer to be searched as contained in the affidavit *759 accompanying the warrant made clear that at least three trailers were located on Virginia Oaks Court. Based on an absence of information in the affidavit permitting the conclusion that appellant resided at the residence to be searched, I believe we must conclude under Leon that the portion of the warrant authorizing a search for firearms, ammunition, and other real evidence related to the murder, like the portion of the warrant authorizing a search for videotapes, is based on an affidavit so lacking in probable cause as to render official belief in its existence unreasonable.
Our en banc decision in the more recent case of Anzualda, relied on by the trial court, does not support a different result. Anzualda involved two murders committed on March 17, 2000, “with 9 millimeter rounds.” 44 Va.App. at 771, 607 S.E.2d at 752. The affidavit, which was dated September 15, 2000, alleged that the suspected perpetrator admitted to a third party that he had traded a pistol to Anzualda, and the police sought a warrant to search Anzualda’s residence for a “9 millimeter pistol and/or ammunition.” Id. at 771, 607 S.E.2d at 752-53,
Anzualda, like Janis, involved an invalid warrant and a claim that the affidavit was “so entirely lacking” in indicia of probable cause that a reasonable police officer would not have believed the warrant was valid. Anzualda, 44 Va.App. at 774-79, 780-81, 607 S.E.2d at 754-56, 757 (Humphreys, J., joined by Clements and Felton, JJ., and Annunziata, S.J.) (holding warrant invalid but applying good faith exception); id. at 790-94, 607 S.E.2d at 762-64 (Benton, J., concurring and dissenting, joined by Fitzpatrick, C.J., and Elder and Frank, JJ.) (joining in ruling holding warrant invalid but disagreeing with conclusion that good faith exception applied). In Anzualda, however, unlike in Janis, the affidavit not only described with particularity the item sought and the place to be searched, but also detailed “the transaction that led the police to believe that the item sought would have been found at the place to be searched” and specifically stated that the residence to be searched was Anzualda’s. 44 Va.App. at 782, 784, 607 S.E.2d at 758, 759.
*760 The probable cause defects we found in Anzualda were (1) the lack of a sufficient temporal connection showing that the firearm the suspect may have used to commit murder on March 17, 2000, and traded to Anzualda was still in Anzualda’s possession on September 17, 2000, almost six months later and (2) the lack of evidence to prove that, even if Anzualda still had the weapon, he “was keeping [the] pistol at his home.” Id. at 776-78, 607 S.E.2d at 755-56; see id. at 788-90, 607 S.E.2d at 761-62 (Kelsey, J., joined by Bumgardner, J., concurring in part and dissenting in part) (concluding good faith applied and finding it unnecessary to determine underlying validity of warrant). We held that for purposes of probable cause, the affidavit did not provide a sufficient nexus between the item sought and the premises searched. Id. at 776-78, 607 S.E.2d at 755-56. However, for purposes of applying the good faith exception in Anzualda, we held that “there [was] some indicia of probable cause in the underlying affidavit” and that the good faith exception was applicable because “a reasonable police officer, after assessing the facts set forth in the affidavit, could have believed the warrant was valid.” Id. at 781-84, 607 S.E.2d at 758-59 (emphasis added). We noted as follows:
The facts listed in the affidavit indicate that Anzualda had obtained a pistol from a murder suspect. The affidavit also indicates that Anzualda resided at the premises to be searched. And, because a reasonable police officer could also infer that Anzualda was keeping the pistol at his home, the affidavit does establish a nexus—however slight—between the item sought and the premises to be searched.
Id. at 784, 607 S.E.2d at 759. We distinguished Janis on the ground that the affidavit in that case “described certain criminal activities and provided an address to be searched, but failed to indicate why that address was being searched (e.g., because one of the suspects resided at or was otherwise connected to that address).” Id.
The affidavit in appellant’s case suffers from the same fatal deficiencies as the affidavit in Janis. Here, as in Janis, the affidavit sought to search a particular residence for evidence *761 of a specific crime but made no mention whatever of the fact that the suspect resided at that residence. The only connection in the affidavit here between the residence and the request to search the residence for firearms and ammunition was that the fatal shooting occurred on the same street on which the residence was located. However, the affidavit itself (i) made clear that the street contained at least two additional residences, (ii) gave no indication that the street did not contain numerous other residences, and (in) provided no explanation for why the officer believed firearms and ammunition related to the murder at issue would be found in the particular residence to be searched. See United States v. Gonzales, 399 F.3d 1225, 1229-31 (10th Cir.2005) (concluding good faith exception did not apply because affidavit did not state that suspect resided at place to be searched and “completely failed to explain why the detective believed the items sought would be found” at that address (emphasis added)). As appellant persuasively argues, to hold a reasonable officer could have believed this warrant was valid as to the search for firearms and ammunition would be to hold that a reasonable officer could believe the fact that a murder had been committed on a particular street would give rise to probable cause to search every residence on the street. See Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971) (“[The] distinct objective [of the warrant requirement] is that those searches deemed necessary should be as limited as possible”; it is intended to prevent “a general, exploratory rummaging in a person’s belongings.”). Manifestly, a reasonable officer could not have reached such a conclusion.
B.
REHABILITATION OF DEFICIENCIES IN THE AFFIDAVIT AND SEARCH WARRANT
The majority concludes the contents of the related criminal complaint rehabilitate any deficiencies in the affidavit and search warrant. I disagree.
The good faith exception
*762 does not extend “to allow the consideration of facts known only to an officer and not presented to a magistrate. The Leon test for good faith reliance is clearly an objective one and it is based solely on facts presented to the magistrate.” ... “To permit the total deficiency of the warrant and affidavit to be remedied by subsequent testimony concerning the subjective knowledge of the officer who sought the warrant would, we believe, unduly erode the protections of the fourth amendment.”
Janis, 22 Va.App. at 654-55, 472 S.E.2d at 653-54 (quoting Hove, 848 F.2d at 140). Nevertheless, our Supreme Court has held that, for purposes of Fourth Amendment probable cause analysis, an affidavit or warrant deficient on its face may, under appropriate circumstances, be rehabilitated with facts not included in the affidavit or warrant if the evidence establishes that the omitted facts were disclosed to the magistrate orally “under oath or affirmation” at the time of the application for the warrant but not “reduced to writing.” McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984) (emphasis added); see Derr, 242 Va. at 420-22, 410 S.E.2d at 666-67 (applying McCary to hold Fourth Amendment allows search warrant otherwise unsupported by probable cause to be supplemented or rehabilitated with “additional affidavits which contain collective facts relevant to the same offense when those affidavits are presented, simultaneously, to the issuing magistrate by the same officer”). I assume without deciding, as the majority concludes on the merits, that these principles also apply to an assessment of whether an officer executing a warrant acted in good faith in relying on the affidavit and warrant even though they failed to demonstrate probable cause.
We applied these principles in the probable cause context in Janis. In Janis, the affidavit presented to the magistrate did not contain the address of the location to be searched, but the search warrant issued by the magistrate contained the full street address, city, state, and zip code of the place to be searched. 22 Va.App. at 652, 472 S.E.2d at 653. We assumed in Janis that “[the affiant-officer] verbally supplied the magis *763 trate with this address,” but we refused to “assume that the information was provided ‘under oath or affirmation’ as required by the Fourth Amendment.” Id. at 652 & n. 2, 472 S.E.2d at 653 & n. 2; see Frazier v. Roberts, 441 F.2d 1224, 1227-28 (8th Cir.1971) (citing federal and state decisions reaching this same conclusion and stating that “a bare unsworn assertion for which the informing officer takes no moral or legal responsibility is of course not sufficient”). Similarly, in appellant’s case, the affidavit supporting the search warrant contained an incomplete street address. The affidavit stated that the trailer to be searched, described in some detail, was the third on the left on Virginia Oaks Court, but it included no specific street address or lot number and stated “there are no visible number markings on the residence.” The search warrant itself stated that it was “based on the statements in the attached affidavit sworn to by” Investigator Barker. (Emphasis added). The search warrant did not indicate that it was based on any information, in addition to that contained in the affidavit, that Investigator Barker provided under oath, and no additional evidence offered in the trial court permitted a finding that this address information was provided to the magistrate under oath. See Frazier, 441 F.2d at 1228 (“[W]hether information was given on Oath or affirmation within the meaning of the Fourth Amendment is ... a question of fact.”). The record is wholly silent as to how the magistrate learned at precisely what number on Virginia Oaks Court the described trailer was located. Even if we assume, as we did in Janis, that Investigator Barker verbally provided the magistrate with the street address she included in the search warrant, we may not “assume that the information was provided ‘under oath or affirmation’ as required by the Fourth Amendment.” Janis, 22 Va.App. at 652 & n. 2, 472 S.E.2d at 653 & n. 2; see Tabasko v. Barton, 472 F.2d 871, 874-75 (6th Cir.1972) (holding that where record indicated affiant swore to contents of affidavit and also gave oral statements, record must establish oral statements were made under oath); Durham v. State, 251 Ark. 164, 471 S.W.2d 527, 529-30 (1971) (holding record established affiants swore to contents of affi *764 davits but, because evidence failed to establish they swore to oral statements, those statements could not be considered for purposes of establishing probable cause).
Because no evidence whatever established the house number of the residence to be searched was provided under oath, this information may not be used to establish probable cause to believe that the trailer described in the affidavit bore the address, “101 Virginia Oaks.” In the absence of such information, no reasonable officer could have harbored an objectively reasonable belief, based on the contents of the affidavit, that the magistrate had probable cause to issue the search warrant for the particular numbered residence, “101 Virginia Oaks.”
Thus, even assuming we may consider the contents of the criminal complaint sworn to before the magistrate by the same officer as part of the same transaction within approximately thirty minutes prior to issuance of the search warrant, I believe the same result obtains. The criminal complaint directly links appellant to a particular residence only by virtue of the fact that the complaint lists appellant’s address as “101 Va. Oaks Court.” As set out above, however, the affidavit provides no basis whatever for the conclusion that the trailer to be searched is located at 101 Virginia Oaks. Although the affidavit gives a detailed physical description of the trailer, its only reference to the trailer’s precise location on Virginia Oaks Court is that the trailer to be searched is the third one on the left. Given the lack of a nexus between the residence described in the affidavit and the one specified in the search warrant, the complaint’s indication that appellant, the suspected perpetrator, resided at 101 Virginia Oaks Court is irrelevant for purposes of rehabilitating the affidavit’s failure to establish a nexus between appellant and the place to be searched. Thus, the contents of the criminal complaint were insufficient to rehabilitate the deficiencies in the affidavit and warrant, and the Commonwealth does not contend otherwise.
Because I would hold the good faith exception does not apply to the search for video and audio tapes, firearms, ammunition, and other items related to the subject murder, I *765 believe the trial court’s admission of the ammunition, shoulder holster, and other fírearms-related evidence violated the Fourth Amendment.
C.
REVERSIBLE ERROR
The erroneous admission of these items into evidence cannot be said to be harmless under the facts of this case.[8] “When a federal constitutional error is involved, a reviewing court must reverse the judgment unless it determines that the error is harmless beyond a reasonable doubt.” Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001).
In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution’s case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution’s ease.
Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 1438, 89 L.Ed.2d 674, 686-87 (1986)). Whether an error is harmless must be “determined ‘without usurping the jury’s fact finding function.’ ” Corado v. Commonwealth, 47 Va.App. 315, 323, 623 S.E.2d 452, 456 (2005) (quoting Hooker v. Commonwealth, 14 Va.App. 454, 457, 418 S.E.2d 343, 345 (1992)).
Here, the Commonwealth’s case depended in large part on the testimony of a single eyewitness who testified he saw appellant shoot the victim, accompanied by the testimony of a second witness, who saw appellant at the scene but did not see him fire the fatal shots. The murder weapon was never found, and no ballistics evidence linked appellant to the crime. Other than the eyewitness testimony, the only evidence providing *766 any connection between appellant and the murder weapon was the fact that ammunition of the same brand and caliber had been found in appellant’s home, along with a holster and cleaning kit consistent with a firearm of the same type and caliber used to commit the murder. In closing argument, the Commonwealth expressly relied on appellant’s possession of “ammunition just like what killed the victim” and a holster and cleaning kit “consistent with the caliber that claimed the victim” as evidence that corroborated the eyewitness testimony and helped to prove appellant’s guilt. Under these circumstances, we cannot conclude, without usurping the jury’s fact finding function, that the error was harmless beyond a reasonable doubt.
II.
For these reasons, I would hold the search conducted pursuant to the invalid warrant was unreasonable and that the trial court’s refusal to suppress the fruits of that search was reversible error. Because the evidence appellant challenged as hearsay was relevant only as a result of an item, a shoulder holster, found during the unreasonable search, I would hold this issue is moot and that we need not consider it in this appeal. Finally, because the court’s erroneous denial of the motion to suppress cannot be said to be harmless error on the facts of this case, I would reverse appellant’s convictions and remand for a new trial. Thus, I respectfully dissent.

. The Commonwealth has not argued that the admission of the ammunition, holster, and related items, if error, was harmless.