COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, McClanahan and Senior Judge Coleman
Argued at Salem, Virginia


GERMAINE DELANO ADAMS
                                                        OPINION BY
v.        Record No. 1038-05-3              JUDGE ELIZABETH A. McCLANAHAN
                                                      SEPTEMBER 19, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Joseph R. Winston, Special Appellate Counsel (Office of Appellate
Defender, on briefs), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Judith
Williams Jagdmann, Attorney General, on brief), for appellee.


A jury convicted Germaine Delano Adams of second-degree murder and use of a firearm

in the commission of a felony and sentenced him to thirty-three years in the penitentiary.  He

argues the trial court erred in denying his motion to suppress and admitting evidence seized from

his residence under the good faith exception to the search warrant requirement.  Adams also

contends the trial court erred in admitting hearsay evidence from a gun manufacturer's catalog.

For the following reasons, we affirm.

BACKGROUND

On review of the denial of a motion to suppress, we view the evidence in the light most

favorable to the Commonwealth.  Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836,

838 (2002).  In the early morning hours of June 18, 2004, Christopher Junior Hairston was shot

and killed on Virginia Oaks Court in Henry County.  Officers responding to the scene found his

body in the road on Virginia Oaks Court.  Four bullet casings found near Hairston's body were

later determined to have been fired from a 9mm Glock pistol.  Later the day of the shooting, Sergeant Lane Perry and Investigator Steve Burton relayed information provided by witnesses concerning the shooting to Investigator Scott Barker.

Barker prepared and signed a "Criminal Complaint" (hereinafter "complaint") wherein he swore under oath before Magistrate E. Whitney Smith, who also signed the complaint, that "[b]ased on information received from witnesses,[1] on [June 18, 2004], the accused – Germaine Delano Adams shot the victim Christopher Junior Hairston in the neck which resulted in the death of the victim.  The incident occurred at approximately 0137 hrs on Virginia Oaks Ct. in Henry County, Va."  On the reverse side of the complaint, Barker further wrote, "[j]ust prior to the shooting Germaine Delano Adams and Christopher Junior Hairston were arguing over $20 that Christopher Junior Hairston owed Germaine D. Adams."  The complaint stated Adams's address is "101 Va. Oaks Ct., Ridgeway, Va. 24148" and was sworn to before Magistrate Smith on June 18, 2004 at 4:41 p.m.

Barker then prepared an affidavit that was also signed by Magistrate Smith, stating that Hairston had received a fatal gunshot wound to the neck at approximately 1:37 a.m. on June 18, 2004, "while he was on Virginia Oaks Ct."  The affidavit noted, "[b]ased on witness statements, the victim Christopher Junior Hairston was in a [sic] arguement [sic] with Germaine Delano Adams at the time he was shot."  The affidavit specifically identified the residence to be searched by providing the following directions:

> Turn on to Virginia Oaks Ct. from Axton Rd. . . . The trailor [sic] to be searched will be the third trailor [sic] on the left on Virginia Oaks Ct.  The residence is light grey [sic] with dark grey [sic] trim. The residence has a front wood stoop with three steps and two

---

[1] On appeal, Adams does not raise the issue of the witness informants' reliability.  In his reply brief, Adams states "[h]ere, the missing factor did not concern any hyper technical analysis of whether or not the informant was reliable.  It concerned the fundamental failure to link the place to be searched to the defendant in any way."  See Rules 5A:18 and 5A:20(e).

rails.  The residence has a white front door and a satellite dish on
the roof at the rear.

The affidavit further stated "there are no visible number markings on the residence," but it "ha[d]

what appear[ed] to be a video camera on the outside."  It requested authorization to search for

videotapes, digital recordings, audio recordings, weapons (including but not limited to a 9mm

caliber weapon), ammunition, and "any and all evidence relating to the murder of Christopher

Junior Hairston."  See infra n.7.

The affidavit identified Sgt. Perry, Criminal Investigations Supervisor - Henry County

Sheriff's Office, who was investigating at the scene, as Barker's source of information.[2]  Burton,

who had also investigated the crime scene, assisted Barker with the affidavit.[3]  From Perry,

Barker obtained a "description of the trailer, how to get to it, and so on and so forth."  From

Burton, Barker obtained the "probable cause information."  Barker, believing he had probable

cause for the issuance of a search warrant, submitted the affidavit on June 18, 2004 at 5:00 p.m.,

nineteen minutes after he submitted the complaint.  On June 18, 2004, at 5:17 p.m., Magistrate

Smith issued a search warrant for "101 Virginia Oaks, Ridgeway, VA 24148."  The search

warrant contained detailed physical directions as set forth in the affidavit to the residence to be

searched and authorized seizure of the items requested in the affidavit.  The search warrant was

executed at 6:23 p.m. on the same day.

During the search of the master bedroom in Adams's residence, from a coat pocket,

police seized seven Federal brand 9mm Luger cartridges in a plastic bag that were identical to

the casings found near Hairston's body.  The officers also recovered, among other items, a pistol

---

[2] At the suppression hearing, Barker testified that when he arrived at work the morning of
the murder, Perry called to ask him to apply for a search warrant for Adams's residence "because
there had been a shooting in front of it that prior night."

[3] Both Burton and Perry were Barker's supervisors.

cleaning kit suitable for a 9mm handgun, two Uncle Mike's gun holsters, and from a closet, fifteen Winchester brand 9mm cartridges in a Federal ammunition box. No weapons were recovered.

Prior to trial, Adams moved to suppress the evidence seized from his residence and all his related statements, contending, *inter alia*, that "[n]either the search warrant nor the affidavit allege[d] that the house to be searched [was] the defendant's residence," "that they [did] not link the defendant in any way to that residence," and that they "[did] not contain any probable cause indicating that the items to be searched for [were] located in that house." The trial court found the warrant invalid because it was "so thin . . . as far as nexus" on probable cause.

Counsel then focused their arguments on the applicability of the good faith exception to the warrant requirement, and the trial court took the matter under advisement. Initially, the trial court ruled the good faith exception did not apply because the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence as unreasonable." Subsequent to this ruling and before Adams's trial, this Court decided <u>Anzualda v. Commonwealth</u>, 44 Va. App. 764, 607 S.E.2d 749 (2005) (*en banc*).[4] The trial court granted the Commonwealth's motion to reconsider its ruling in light of the <u>Anzualda</u> holding. By letter opinion, the trial court reversed itself and denied the motion to suppress on the ground that the good faith exception applied because, as stated in <u>Anzualda</u>, "there is *some* indicia of probable cause in the underlying affidavit" and, thus, "the good faith exception applies in this case." <u>Id.</u> at 781, 607 S.E.2d at 757

---

[4] In <u>Anzualda v. Commonwealth</u>, 42 Va. App. 481, 592 S.E.2d 761 (2004), the defendant argued the trial court erred in denying his motion to suppress evidence seized because the warrant failed to establish probable cause and the good faith exception to the warrant requirement did not apply. A panel of this Court agreed and reversed the trial court's ruling. The Commonwealth filed a petition for rehearing *en banc*. Sitting *en banc*, this Court reinstated the trial court's initial ruling denying the motion to suppress, holding that the affidavit "establish[ed] *a* nexus (albeit an insufficient nexus for a finding of probable cause) between the [item sought] and the premises to be searched"; and thereby allowing the good faith exception to save the deficient warrant. <u>Anzualda</u>, 44 Va. App. at 785, 607 S.E.2d at 760.

(emphasis in original). The trial court also stated "[t]he officer acted reasonably in believing the warrant to be valid."

At trial, Barker identified and described the items seized from Adams's residence. When asked about the shoulder holsters, Barker specifically testified they were manufactured by "Uncle Mike's" and were of two different sizes. The Commonwealth asked Barker to read from an "Uncle Mike's" catalog the types of weapons the holsters were designed to fit. Adams objected on hearsay grounds. The Commonwealth stated the evidence was not hearsay or was admissible as a "business record" or "public record." The trial court overruled the objection. Forensic evidence proved Hairston was shot with a Glock pistol. Based upon the "Uncle Mike's" catalog, Barker stated one of the holsters found in the residence was designed to fit certain Glock 9mm weapons.

An eyewitness to the murder also testified that Adams and Hairston had argued over money, Adams "walked up on [Hairston] with the gun and pushed him in the shoulder and [Hairston] tried to grab [Adams's] arm and that is when [Adams] shot him." This witness further testified that he heard "two or three" shots, "and then [Adams] stood over top of [Hairston] and [Adams] shot him." Finally, the witness testified that Adams "ran in his trailer" after he shot Hairston. Another witness testified that he heard arguing, then "some [gun]shots went off," and Adams ran into his residence after the shooting. The jury convicted Adams of second-degree murder and the use of a firearm in the commission of a felony.

STANDARD OF REVIEW

On appeal, Adams contends the trial court erred in applying the good faith exception to the exclusionary rule.[5] Though we defer to the trial court's findings of historical fact unless

_____

[5] The trial court found there was insufficient probable cause for the search warrant because the affidavit did not link Adams to the premises to be searched. The Commonwealth did not further challenge that ruling, but rather focused its argument on whether the officers acted in

- 5 -

plainly wrong or without evidence to support them, we review the trial court's determination that the good faith exception applied *de novo*. United States v. DeQuasie, 373 F.3d 509, 520 (4th Cir. 2004); McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001); see also Anzualda, 44 Va. App. at 773-74, 607 S.E.2d at 753-54; Barkley v. Commonwealth, 39 Va. App. 682, 689-90, 576 S.E.2d 234, 237-38 (2003). Furthermore, when a defendant challenges the denial of a motion to suppress, he has the burden to show that the trial court's ruling constituted reversible error. Whitfield v. Commonwealth, 265 Va. 358, 361, 576 S.E.2d 463, 464 (2003). "'Absent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts.'" Barkley, 39 Va. App. at 690, 576 S.E.2d at 238 (citations omitted).

## ANALYSIS

### A. Application of the Good Faith Exception

The exclusionary rule is a judicial creation which, under certain circumstances, prevents evidence obtained in violation of one's Fourth Amendment rights from being admitted into evidence against him in a criminal prosecution. Commonwealth v. Ealy, 12 Va. App. 744, 750, 407 S.E.2d 681, 685 (1991). The United States Supreme Court has, however, "rejected indiscriminate application of the [exclusionary] rule, and [has] held it to be applicable only where its remedial objectives are thought most efficaciously served – that is, where its deterrence benefits outweigh its substantial social costs." Hudson v. Michigan, 126 S. Ct. 2159, 2163 (2006) (citations and internal quotation marks omitted).

---

good faith in executing the warrant. Thus, the only issue on appeal is whether the trial court erred in holding the evidence was admissible under the good faith exception. For the purpose of this opinion, we assume, without deciding, that the trial court correctly concluded that the underlying affidavit did not provide the magistrate with probable cause and, therefore, the search warrant was invalid.

- 6 -

Evidence seized pursuant to a warrant should be suppressed "only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." United States v. Leon, 468 U.S. 897, 918 (1984). "The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Janis v. Commonwealth, 22 Va. App. 646, 653, 472 S.E.2d 649, 653, aff'd en banc, 24 Va. App. 207, 479 S.E.2d 534 (1996) (citation and internal quotation marks omitted). "The premise for the good faith exception lies in the belief that when officers rely in good faith upon a warrant subsequently quashed for lack of probable cause, suppressing the evidence will have no deterrent effect." Marc Zamsky, Criminal Procedure: Inconsistent Application of Good Faith, 64 Temp. L. Rev. 801, 816 (1991) (citing Leon, 468 U.S. at 920-21); see also Polston v. Commonwealth, 255 Va. 500, 503, 498 S.E.2d 924, 925 (1998). Thus, "evidence seized pursuant to [a] warrant is . . . admissible if the officer executing the warrant reasonably believed that the warrant was valid." Tart v. Commonwealth, 17 Va. App. 384, 389, 437 S.E.2d 219, 222 (1993) (citation and internal quotation marks omitted). An officer ordinarily cannot be expected to question the magistrate's determination of probable cause. Janis, 22 Va. App. at 653, 472 S.E.2d at 653.

> Where a reasonable police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate's probable cause determination and the evidence will not be excluded, even though the affidavit may not have provided the magistrate . . . with probable cause to issue the warrant.

Colaw v. Commonwealth, 32 Va. App. 806, 810-11, 531 S.E.2d 31, 33 (2000) (citing Leon, 468 U.S. at 918-22).

Adams argues the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable" because it failed to link the place to be searched to the defendant in any way. See Atkins v. Commonwealth, 9 Va. App. 462, 464, 389 S.E.2d 179, 180 (1990) (quoting Leon, 468 U.S. at 923); see also Janis, 22 Va. App. at 653, 472

- 7 -

S.E.2d at 653. Although the affidavit alone may fail to link the place to be searched to Adams, the complaint, when read together with the affidavit, is sufficient.

An affidavit deficient on its face may, under appropriate circumstances, be rehabilitated with facts not included in the affidavit if the evidence establishes that the omitted facts were actually disclosed to the magistrate under oath or affirmation.[6] See McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984); Derr v. Commonwealth, 242 Va. 413, 420, 410 S.E.2d 662, 665-66 (1991). We emphasize that, as to the facts supporting probable cause for issuance of a search warrant, see McCary, 228 Va. at 231, 321 S.E.2d at 644, "[a]n obviously deficient affidavit cannot be cured by an officer's later testimony on his subjective intentions or knowledge." United States v. Hove, 848 F.2d 137, 140 (9th Cir. 1988); see also Janis, 22 Va. App. at 655, 472 S.E.2d at 655 ("To permit the total deficiency of the warrant and affidavit to be remedied by subsequent testimony concerning the subjective knowledge of the officer who sought the warrant would, we believe, unduly erode the protections of the fourth amendment." (citation and internal quotation marks omitted)).

Here, the record shows there were two sworn documents, a criminal complaint and an affidavit. Both were presented to and signed by the magistrate prior to her issuance of the search

---

[6] Though no Virginia case has adopted the principle in analyzing the good faith exception, the Virginia Supreme Court, in McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984), and Derr v. Commonwealth, 242 Va. 413, 420, 410 S.E.2d 662, 665-66 (1991), in their probable cause analyses, noted "an insufficient affidavit may be supplemented or rehabilitated by information disclosed to the issuing magistrate upon application for the search warrant." In McCary, our Supreme Court stated that the supplemental information must be submitted to the magistrate "under oath or affirmation," although the "sworn statement" need not "be reduced to writing." 228 Va. at 231, 321 S.E.2d at 643. In Derr, our Supreme Court held that an affidavit "may be supplemented or rehabilitated with additional affidavits which contain collective facts relevant to the same offenses when those affidavits are presented, simultaneously, to the issuing magistrate by the same officer." 242 Va. at 420, 410 S.E.2d at 666 (citation and internal quotation marks omitted). In both of these cases, the Supreme Court held the searches valid under the probable cause and good faith exception analyses. These principles guide us in analyzing the officer-affiant's good faith belief in the existence of probable cause and reliance on the warrant.

warrant, and both were executed within minutes of each other. The complaint states that based on witness statements, Adams shot Hairston and that Adams's address was "101 Va. Oaks Ct." The affidavit for the search warrant states that the place to be searched was on "Virginia Oaks Ct." and contained detailed physical directions to the place to be searched, which "bore no visible number markings" on it.

Before submitting the affidavit for search warrant, Barker prepared and signed the complaint. In the complaint, Barker swore under oath before Magistrate Smith, who signed the complaint, that based on information provided by witnesses, "on [June 18, 2004], the accused – Germaine Delano Adams shot the victim Christopher Junior Hairston in the neck which resulted in the death of the victim. The incident occurred at approximately 0137 hrs on Virginia Oaks Ct. in Henry County, Va." On the reverse side of the complaint, Barker further wrote, "[j]ust prior to the shooting Germaine Delano Adams and Christopher Junior Hairston were arguing over $20 that Christopher Junior Hairston owed Germaine D. Adams." The complaint also states Adams's address is "101 Va. Oaks Ct., Ridgeway, Va. 24148" and was sworn to before Magistrate Smith on June 18, 2004 at 4:41 p.m.

The affidavit for the search warrant sworn under oath and signed by Barker before the same magistrate was submitted nineteen minutes after the complaint identifying Adams as the suspected murderer and listing his address as "101 Va. Oaks Ct." The affidavit states "there are no visible number markings on the [trailer to be searched]," but specifically describes the particular residence to be searched and further provides detailed directions to the residence on "Virginia Oaks Ct." The search warrant issued by the same magistrate, just minutes after the complaint and affidavit were submitted, states the premises to be searched as "101 Virginia Oaks" and also includes the specific directions, as supplied in the affidavit, to the residence on "Virginia Oaks Ct."

When the complaint and affidavit are read together, it is clear that the sworn facts actually disclosed to the magistrate included the address and specific directions to the residence of the suspected murderer, Adams. We find that a reasonable officer, acting in objective good faith, reviewing the facts presented under oath to the magistrate, could have believed the magistrate had probable cause to issue the search warrant for Adams's residence and that he could, therefore, rely on the warrant. See Anzualda, 44 Va. App. at 781-82, 607 S.E.2d at 757-58.

Our holding in Janis does not require a different result. Although Janis holds the court may look no further than the "four corners" of the affidavit for the search warrant in determining whether an officer's reliance on the magistrate's probable cause determination was reasonable, in that case, nothing in the record indicated the magistrate was ever presented with any information reduced to sworn statements under oath or affirmation other than the affidavit for the search warrant. Janis, relying only on the sworn affidavit, reasons "[t]he Leon test for good faith reliance is clearly an objective one and it is based solely on facts presented to the magistrate," and "does not extend 'to allow the consideration of facts known only to an officer and not presented to a magistrate.'" 22 Va. App. at 654, 472 S.E.2d at 653-54 (quoting Hove, 848 F.2d at 140). Here, the officer relied in good faith on evidence before the magistrate, as indicated in the written facts sworn to under oath contained in the complaint and affidavit. This case is, therefore, consistent with the *ratio decidendi* of Janis.

While Adams argues the affidavit failed to connect him to the place to be searched, "the crucial element is . . . whether it is reasonable to believe that the items to be seized will be found in the place to be searched." United States v. Lalor, 996 F.2d 1578, 1582 (1993) (citation omitted); see also Anzualda, 44 Va. App. at 781-88, 607 S.E.2d at 757-61 (defect relating to the affidavit's failure to provide sufficient nexus between weapon and defendant's residence was

cured where affidavit, containing *some indicia of probable cause*, established *a* nexus between weapon and premises by providing some facts linking the weapon to the premises to be searched); cf. Janis, 22 Va. App. at 653-54, 472 S.E.2d at 653 (affidavit supporting a search warrant "gave absolutely no indication that the fruits of criminal activity would probably be found at [the location searched]").

It is well established that "the nexus between the place to be searched and the items to be seized may be established by the nature of the item[s] and the normal inferences of where one would likely keep such evidence." United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988) (citation omitted); see also United States v. Gant, 759 F.2d 484, 488 (5th Cir.) (affidavit's factual link to the search may be created through "normal inferences about the location of the evidence" (citation omitted)), cert. denied, 474 U.S. 851 (1985). "[B]ecause a reasonable police officer could also infer [the defendant] was keeping the [weapon and ammunition] at his home, the affidavit does establish a nexus – however slight – between the item[s] sought[7] and the premises to be searched. See, e.g., United States v. Manetti, 781 F.Supp. 169, 177 (W.D.N.Y. 1991) ('In the case of firearms . . . [it is] reasonable [to] infer[] [that] . . . one would likely keep such evidence [] at home.')." Anzualda, 44 Va. App. at 784, 607 S.E.2d at 759 (footnote added); see

---

[7] The affidavit also included in the list of things to be searched for "any and all videotapes, digital recordings, [and] audio recordings." The affidavit stated that the murder occurred on "Virginia Oaks Ct.," and the warrant stated that the particular residence for which the warrant was sought was "101 Virginia Oaks." Both the affidavit and warrant indicated that the residence to be searched "ha[d] what appear[ed] to be a video camera on the outside." No evidence in the record indicates that the officers found or seized any videotapes or similar items as a result of the search.

On appeal, Adams does not argue that the search warrant's authorization to search for "any and all evidence relating to the murder . . . " constituted an unconstitutional "general warrant" that failed to particularly describe the objects to be seized. See Morke v. Commonwealth, 14 Va. App. 496, 500, 419 S.E.2d 410, 413 (1992) (stating general warrants are proscribed by both the Fourth Amendment and Code § 19.2-54). Accordingly, we will not address the merits of this issue. See Rules 5A:18 and 5A:20(e).

also Gregory v. Commonwealth, 46 Va. App. 683, 621 S.E.2d 162 (2005) (reasonable to assume weapons kept in residence).

The affidavit at issue in Janis described the criminal activity and provided an address to be searched, but failed to indicate why it was being searched (e.g., the suspect resided there or was connected to that address).  See Anzualda, 44 Va. App. at 784, 607 S.E.2d at 759.  In the instant case, by contrast, the complaint and affidavit, when read together, indicate an objectively reasonable police officer could believe the magistrate knew Adams was the suspected murderer and lived on "101 Va. Oaks Ct." at the residence specifically described with detailed directions.  And, the officer could infer that Adams, the suspected murderer living at that residence on 101 Va. Oaks Ct., would likely keep a murder weapon, ammunition, and weapon accessories, the items sought in the affidavit and search warrant, at his residence, thus establishing a nexus between the place to be searched and the items to be seized.

In this case, "there is no evidence that the police acted other than in good faith."  Tart, 17 Va. App. at 389, 437 S.E.2d at 222.  The information presented to the magistrate was provided by investigating officers and based on statements by witnesses.  See McCary, 228 Va. at 230-31, 321 S.E.2d at 642-44 (since affidavit contained allegations of fact known to victims, eyewitnesses, and investigating officers, information contained therein supported probable cause for issuance of warrant, and reasonable reliance on its validity); see also United States v. Perez, 393 F.3d 457, 462-65 (2004).

If the evils Leon sought to avoid are not present, the evidence should be admitted.  Polston, 255 Va. at 504, 498 S.E.2d at 926; Derr, 242 Va. at 423, 410 S.E.2d at 667.  Based on the information provided to the issuing magistrate, Barker's "reliance on the magistrate's determination of probable cause was objectively reasonable, and application of the extreme sanction of exclusion is inappropriate."  Leon, 468 U.S. at 926; see also United States v.

- 12 -

Carpenter, 360 F.3d 591, 595-96 (6th Cir. 2004); Miles v. Commonwealth, 13 Va. App. 64, 71, 408 S.E.2d 602, 606 (1991), aff'd en banc, 14 Va. App. 82, 414 S.E.2d 619 (1992). Here, the officers conducted a search in good faith, "act[ing] reasonably under the authority of an apparently valid warrant." McCary, 228 Va. at 232; 321 S.E.2d at 644; see Derr, 242 Va. at 423, 410 S.E.2d at 667. Finding the good faith exception to the exclusionary rule applies, we conclude the trial court did not err in admitting the items seized from Adams's residence.

### B. Objection to Hearsay Testimony

Adams contends the trial court erred in admitting, over his hearsay objection, Investigator Barker's testimony about the contents of a gun manufacturer's catalog, which he "read from the catalog." The Commonwealth contends Adams either did not preserve the objection with sufficient specificity or, in the alternative, if the trial court erred, the error was harmless.

Although we conclude Adams preserved the objection, assuming, without deciding, the trial court erred in admitting the evidence, we conclude such error was harmless. See Hope v. Commonwealth, 8 Va. App. 491, 497, 386 S.E.2d 807, 810 (1989), aff'd en banc, 10 Va. App. 381, 392 S.E.2d 830 (1990). The evidence showed that Adams and Hairston were arguing on Virginia Oaks Court. An eyewitness to the murder testified that Adams approached Hairston with a gun and pushed him in the shoulder, and when Hairston tried to grab Adams's arm, Adams shot him. This witness further testified that he heard "two or three shots," and then Adams "stood over top" of Hairston and shot him. Finally, the witness testified that Adams "ran in his trailer" after he shot Hairston. Another witness testified that he heard arguing, then "some [gun]shots went off," and Adams ran into his residence after the shooting. The murder took place outside Adams's residence. Hairston was killed by a close range gunshot wound fired from a Glock pistol. Four 9mm bullet casings were found near his body, and analysis revealed that the shots were fired from a Glock pistol. During a search of the master bedroom in Adams's

residence, from a coat pocket, police seized seven Federal brand 9mm Luger cartridges matching those found near Hairston's body. Also in the master bedroom, police recovered, among other items, a pistol cleaning kit suitable for a 9mm handgun and two Uncle Mike's gun holsters. In a Federal ammunition box in the closet, police recovered fifteen Winchester brand 9mm cartridges.

The two Uncle Mike's gun holsters recovered were size zero and size fifteen. Barker testified that the size fifteen is for semi-automatic handguns and read from the manufacturer's catalog the list of firearms that fit the size fifteen holster, which included a 9mm Glock pistol. This testimony linking the catalog list to the holster found in Adams's residence is mere harmless error in light of the eyewitnesses' testimony and the recovery in Adams's residence of the 9mm cartridges matching those found near Hairston's body along with a pistol cleaning kit suitable for a firearm of the same type and caliber used to commit the murder.

Where the erroneous admission of evidence is not of a constitutional dimension, said error "does not affect the verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Lavinder v. Commonwealth, 12 Va. App. 1003, 1006, 407 S.E.2d 910, 911 (1991) (*en banc*); see also Hope, 8 Va. App. at 497, 386 S.E.2d at 810. We can say, with fair assurance, "after pondering all that happened without stripping the erroneous action from the whole," Kotteakos v. United States, 328 U.S. 750, 765 (1946), that it plainly appears Adams has had a fair trial and the verdict and the judgment were not substantially affected by the admission of the contents of the catalog. See Clay v. Commonwealth, 262 Va. 253, 259-60, 546 S.E.2d 728, 731 (2001); see also Code § 8.01-678.

Accordingly, we affirm Adams's convictions.

Affirmed.

- 14 -

Elder, J., dissenting.

I believe the majority strains by attempting, *sua sponte*, to rehabilitate a search warrant deficient in probable cause with reference to information contained in a related criminal complaint. I would hold the affidavit and warrant were so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable, even when considered in light of the contents of the criminal complaint. Thus, I would hold the good faith exception to the Fourth Amendment's exclusionary rule does not apply, rendering the search of the residence of Germaine Delano Adams (appellant), conducted pursuant to an invalid warrant, unreasonable under the facts of this case. Therefore, I conclude the trial court's refusal to suppress the fruits of that search was reversible error. Because the evidence challenged as hearsay was relevant only as a result of an item, a shoulder holster, found during the unreasonable search, I would hold that this issue is moot and that we need not consider it in this appeal. Finally, because I believe the trial court's denial of the motion to suppress was erroneous and cannot be said to be harmless on the facts of this case, I would reverse appellant's convictions and remand for a new trial. Thus, I respectfully dissent.

I.

An appellant's claim that evidence was seized in violation of the Fourth Amendment "presents a mixed question of law and fact that we review *de novo* on appeal. In making such a determination, we give deference to the factual findings of the trial court and independently determine whether the manner in which the evidence was obtained [violated] the Fourth Amendment." Murphy v. Commonwealth, 264 Va. 568, 573, 570 S.E.2d 836, 838 (2002) (citations omitted); see also Ornelas v. United States, 517 U.S. 690, 691, 699, 116 S. Ct. 1657, 1659, 1663, 134 L. Ed. 2d 911, 916, 920 (1996).

- 15 -

In order to meet the Fourth Amendment's probable cause standard, the facts set forth in an affidavit given to support the issuance of a search warrant must establish a nexus between the place to be searched and the criminal activity or evidence in question. Janis v. Commonwealth, 22 Va. App. 646, 652, 472 S.E.2d 649, 652, aff'd on reh'g en banc, 23 Va. App. 696, 479 S.E.2d 534 (1996). The affidavit must, at a minimum, "explain the significance or relevance of searching [the] particular location." United States v. Hove, 848 F.2d 137, 139 (9th Cir. 1988), cited with approval in Janis, 22 Va. App. at 652, 472 S.E.2d at 652-53. The affidavit must provide a nexus for each of the items or categories of items listed in the warrant. 2 Wayne R. LaFave, Search and Seizure § 3.7(d), at 433-36 (4th ed. 2004). Absent such a nexus, "the magistrate who issued the warrant could not reasonably have concluded that [the evidence sought] would probably be found at the premises to be searched." Janis, 22 Va. App, at 652, 472 S.E.2d at 653.

Here, the trial court ruled that the statements contained in the affidavit were insufficient to provide the nexus necessary to establish probable cause for issuance of the warrant. The Commonwealth did not appeal this issue. Thus, I agree with the majority that the correctness of that part of the ruling is not before us on appeal and that we must examine only the issue of the good faith exception to the warrant requirement.

"Generally, '[w]here law enforcement officers illegally search private premises or seize property without probable cause . . . the illegally seized evidence will be excluded . . . .'" Anzualda v. Commonwealth, 44 Va. App. 764, 779, 607 S.E.2d 749, 756 (2005) (en banc) (quoting Colaw v. Commonwealth, 32 Va. App. 806, 810, 531 S.E.2d 31, 33 (2000)).

> However, because "[t]he deterrent effect of the exclusionary rule 'is absent where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the warrant,'" Janis, 22 Va. App. at 653, 472 S.E.2d at 653 (quoting Derr [v. Commonwealth, 242 Va. 413, 422, 410 S.E.2d 662, 667 (1991))], evidence seized pursuant to an invalid search warrant "is

- 16 -

> nevertheless admissible if the officer executing the warrant reasonably believed that the warrant was valid." <u>Lanier v. Commonwealth</u>, 10 Va. App. 541, 547, 394 S.E.2d 495, 499 (1990).

<u>Id.</u> at 779-80, 607 S.E.2d at 757 (other citations omitted).

Because "'[t]he exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates[,]' '[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient,'" <u>Janis</u>, 22 Va. App. at 653, 472 S.E.2d at 653 (quoting <u>United States v. Leon</u>, 468 U.S. 897, 916, 921, 104 S. Ct. 3405, 3417, 3419, 82 L.Ed.2d 677, 694, 697 (1984)), and the existence of objective good faith may save the search. However, the good faith exception is unavailable when, *inter alia*, the "'warrant [is] based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."'" <u>Polston v. Commonwealth</u>, 255 Va. 500, 503, 498 S.E.2d 924, 926 (1998) (quoting <u>Leon</u>, 468 U.S. at 923, 104 S. Ct. at 3421, 82 L.Ed.2d at 699) (citation omitted).

The majority states that "[t]he affidavit alone may fail to link the place to be searched to the defendant," but it considers, *sua sponte*, the contents of the criminal complaint that was submitted in support of the request for issuance of two arrest warrants for appellant, <u>see</u> Rules 3A:3, 3A:4, 7C:3; Rules Pt. 3A, Form 1, a document not relied upon at any stage of these proceedings by either of the parties or the trial court. It concludes that the criminal complaint, when read in conjunction with the affidavit and warrant, is sufficient to rehabilitate any deficiencies for purposes of the good faith exception. I would hold both (1) that a reasonable officer in Barker's position could not have relied in good faith on the affidavit and search warrant and (2) that the contents of the criminal complaint do not rehabilitate the deficiencies in the affidavit and warrant.

- 17 -

## A.

## THE AFFIDAVIT AND WARRANT

I believe that the evidence of a nexus that was before the magistrate was insufficient to permit application of the good faith exception as to both (1) video and audio recordings and (2) firearms, ammunition, and any other real "evidence relating to the murder of Christopher Junior Hairston."

Here, the only information in the affidavit purporting to provide probable cause for a search for video and audio tapes was the statement that the place to be searched "ha[d] what appear[ed] to be a video camera on the outside." The affidavit indicated the residence bore no visible street number, and but for the fact that the affidavit sought authority to search for video recordings, this mention of an object resembling a video camera could have been included solely for the purpose of identifying which residence the police sought to search. The affidavit provided no explanation for why the officers believed the object that appeared to be a video camera in front of the residence at issue may have recorded something relevant to the shooting. The affidavit also provided no indication regarding whether the camera appeared to be functional or whether it could have been a non-operational camera installed solely to provide the illusion of a security system. As the trial court observed, the affidavit did not indicate that the shooting occurred in front of the trailer to be searched or that the object, if it was in fact a video camera, was pointed in the direction of the shooting or the direction in which the shooter fled. The affidavit itself (i) made clear that the street contained at least two additional residences, (ii) gave no indication that the street did not contain numerous other residences, and (iii) failed to indicate the length of the street. Absent evidence that any additional relevant information was presented to the magistrate, I would hold the search warrant was so lacking in indicia of probable cause as

to render official belief in the existence of probable cause to search for video or audio tapes entirely unreasonable.

I would reach the same result as to the search for firearms, ammunition, and any other real "evidence relating to the murder of Christopher Junior Hairston," based on our holding in Janis. In Janis, the challenged affidavit contained an insufficient nexus between marijuana being cultivated in Dinwiddie County and the Hopewell location for which the search warrant was issued. 22 Va. App. at 653-55, 472 S.E.2d at 653-54. The affidavit in Janis indicated that Janis was seen on property in Dinwiddie on which marijuana was being cultivated, but it gave no indication as to how Janis was linked to the place to be searched in Hopewell. Id. at 652-53, 472 S.E.2d at 653. As a result, we held that "[the officer's] belief in probable cause, *based solely on the affidavit, [was] objectively unreasonable,*" and, thus, that the good faith exception did not apply "[d]espite the absence of police misconduct." Id. at 653, 472 S.E.2d at 653.

Similarly, in appellant's case, the affidavit contained no information whatever to explain why police believed a search of the particular residence on Virginia Oaks Court would yield firearms, ammunition, or any other real evidence relating to the murder of Christopher Junior Hairston. The affidavit failed to mention that the alleged perpetrator, who had been identified by a witness, resided there. The detailed directions to the trailer to be searched as contained in the affidavit accompanying the warrant made clear that at least three trailers were located on Virginia Oaks Court. Based on an absence of information in the affidavit permitting the conclusion that appellant resided at the residence to be searched, I believe we must conclude under Leon that the portion of the warrant authorizing a search for firearms, ammunition, and other real evidence related to the murder, like the portion of the warrant authorizing a search for videotapes, is based on an affidavit so lacking in probable cause as to render official belief in its existence unreasonable.

- 19 -

Our *en banc* decision in the more recent case of Anzualda, relied on by the trial court, does not support a different result.  Anzualda involved two murders committed on March 17, 2000, "with 9 millimeter rounds."  44 Va. App. at 771, 607 S.E.2d at 752.  The affidavit, which was dated September 15, 2000, alleged that the suspected perpetrator admitted to a third party that he had traded a pistol to Anzualda, and the police sought a warrant to search Anzualda's residence for a "9 millimeter pistol and/or ammunition."  Id. at 771, 607 S.E.2d at 752-53,

Anzualda, like Janis, involved an invalid warrant and a claim that the affidavit was "so entirely lacking" in indicia of probable cause that a reasonable police officer would not have believed the warrant was valid.  Anzualda, 44 Va. App. at 774-79, 780-81, 607 S.E.2d at 754-56, 757 (Humphreys, J., joined by Clements and Felton, JJ., and Annunziata, S.J.) (holding warrant invalid but applying good faith exception); id. at 790-94, 607 S.E.2d at 762-64 (Benton, J., concurring and dissenting, joined by Fitzpatrick, C.J., and Elder and Frank, JJ.) (joining in ruling holding warrant invalid but disagreeing with conclusion that good faith exception applied).  In Anzualda, however, unlike in Janis, the affidavit not only described with particularity the item sought and the place to be searched, but also detailed "the transaction that led the police to believe that the item sought would have been found at the place to be searched" and specifically stated that the residence to be searched was Anzualda's.  44 Va. App. at 782, 784, 607 S.E.2d at 758, 759.

The probable cause defects we found in Anzualda were (1) the lack of a sufficient temporal connection showing that the firearm the suspect may have used to commit murder on March 17, 2000, and traded to Anzualda was still in Anzualda's possession on September 17, 2000, almost six months later and (2) the lack of evidence to prove that, even if Anzualda still had the weapon, he "was keeping [the] pistol at his home."  Id. at 776-78, 607 S.E.2d at 755-56; see id. at 788-90, 607 S.E.2d at 761-62 (Kelsey, J., joined by Bumgardner, J., concurring in part

and dissenting in part) (concluding good faith applied and finding it unnecessary to determine underlying validity of warrant). We held that for purposes of probable cause, the affidavit did not provide a sufficient nexus between the item sought and the premises searched. Id. at 776-78, 607 S.E.2d at 755-56. However, for purposes of applying the good faith exception in Anzualda, we held that "there [was] *some* indicia of probable cause in the underlying affidavit" and that the good faith exception was applicable because "a reasonable police officer, after assessing the facts set forth in the affidavit, could have believed the warrant was valid." Id. at 781-84, 607 S.E.2d at 758-59 (emphasis added). We noted as follows:

> The facts listed in the affidavit indicate that Anzualda had obtained a pistol from a murder suspect. The affidavit also indicates that Anzualda resided at the premises to be searched. And, because a reasonable police officer could also infer that Anzualda was keeping the pistol at his home, the affidavit does establish a nexus--however slight--between the item sought and the premises to be searched.

Id. at 784, 607 S.E.2d at 759. We distinguished Janis on the ground that the affidavit in that case "described certain criminal activities and provided an address to be searched, but failed to indicate *why* that address was being searched (*e.g.*, because one of the suspects resided at or was otherwise connected to that address)." Id.

The affidavit in appellant's case suffers from the same fatal deficiencies as the affidavit in Janis. Here, as in Janis, the affidavit sought to search a particular residence for evidence of a specific crime but made no mention whatever of the fact that the suspect resided at that residence. The only connection in the affidavit here between the residence and the request to search the residence for firearms and ammunition was that the fatal shooting occurred on the same street on which the residence was located. However, the affidavit itself (i) made clear that the street contained at least two additional residences, (ii) gave no indication that the street did not contain numerous other residences, and (iii) provided no explanation for why the officer

- 21 -

believed firearms and ammunition related to the murder at issue would be found in the particular residence to be searched. See United States v. Gonzales, 399 F.3d 1225, 1229-31 (10th Cir. 2005) (concluding good faith exception did not apply because affidavit did not state that suspect resided at place to be searched and "completely failed to explain why the detective believed *the items sought* would be found" at that address (emphasis added)). As appellant persuasively argues, to hold a reasonable officer could have believed this warrant was valid as to the search for firearms and ammunition would be to hold that a reasonable officer could believe the fact that a murder had been committed on a particular street would give rise to probable cause to search every residence on the street. See Coolidge v. New Hampshire, 403 U.S. 443, 467, 91 S. Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971) ("[The] distinct objective [of the warrant requirement] is that those searches deemed necessary should be as limited as possible"; it is intended to prevent "a general, exploratory rummaging in a person's belongings."). Manifestly, a reasonable officer could not have reached such a conclusion.

B.

REHABILITATION OF DEFICIENCIES IN THE AFFIDAVIT AND SEARCH WARRANT

The majority concludes the contents of the related criminal complaint rehabilitate any deficiencies in the affidavit and search warrant. I disagree.

The good faith exception

> does not extend "to allow the consideration of facts known only to an officer and not presented to a magistrate. The Leon test for good faith reliance is clearly an objective one and it is based solely on facts presented to the magistrate." . . . "To permit the total deficiency of the warrant and affidavit to be remedied by subsequent testimony concerning the subjective knowledge of the officer who sought the warrant would, we believe, unduly erode the protections of the fourth amendment."

Janis, 22 Va. App. at 654-55, 472 S.E.2d at 653-54 (quoting Hove, 848 F.2d at 140).

Nevertheless, our Supreme Court has held that, for purposes of Fourth Amendment probable

cause analysis, an affidavit or warrant deficient on its face may, under appropriate circumstances, be rehabilitated with facts not included in the affidavit or warrant if the evidence establishes that the omitted facts were disclosed to the magistrate *orally* "*under oath or affirmation*" at the time of the application for the warrant but not "reduced to writing." McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984) (emphasis added); see Derr, 242 Va. at 420-22, 410 S.E.2d at 666-67 (applying McCary to hold Fourth Amendment allows search warrant otherwise unsupported by probable cause to be supplemented or rehabilitated with "additional affidavits which contain collective facts relevant to the same offense when those affidavits are presented, simultaneously, to the issuing magistrate by the same officer"). I assume without deciding, as the majority concludes on the merits, that these principles also apply to an assessment of whether an officer executing a warrant acted in good faith in relying on the affidavit and warrant even though they failed to demonstrate probable cause.

We applied these principles in the probable cause context in Janis. In Janis, the affidavit presented to the magistrate did not contain the address of the location to be searched, but the search warrant issued by the magistrate contained the full street address, city, state, and zip code of the place to be searched. 22 Va. App. at 652, 472 S.E.2d at 653. We assumed in Janis that "[the affiant-officer] verbally supplied the magistrate with this address," but we refused to "assume that the information was provided 'under oath or affirmation' as required by the Fourth Amendment." Id. at 652 & n.2, 472 S.E.2d at 653 & n.2; see Frazier v. Roberts, 441 F.2d 1224, 1227-28 (8th Cir. 1971) (citing federal and state decisions reaching this same conclusion and stating that "a bare unsworn assertion for which the informing officer takes no moral or legal responsibility is of course not sufficient"). Similarly, in appellant's case, the affidavit supporting the search warrant contained an incomplete street address. The affidavit stated that the trailer to be searched, described in some detail, was the third on the left on Virginia Oaks Court, but it

included no specific street address or lot number and stated "there are no visible number markings on the residence." The search warrant itself stated that it was "based on the statements *in the attached affidavit* sworn to by" Investigator Barker. (Emphasis added). The search warrant did not indicate that it was based on any information, in addition to that contained in the affidavit, that Investigator Barker provided under oath, and no additional evidence offered in the trial court permitted a finding that this address information was provided to the magistrate under oath. See Frazier, 441 F.2d at 1228 ("[W]hether information was given on Oath or affirmation within the meaning of the Fourth Amendment is . . . a question of fact."). The record is wholly silent as to how the magistrate learned at precisely what number on Virginia Oaks Court the described trailer was located. Even if we assume, as we did in Janis, that Investigator Barker verbally provided the magistrate with the street address she included in the search warrant, we may not "assume that the information was provided 'under oath or affirmation' as required by the Fourth Amendment." Janis, 22 Va. App. at 652 & n.2, 472 S.E.2d at 653 & n.2; see Tabasko v. Barton, 472 F.2d 871, 874-75 (6th Cir. 1972) (holding that where record indicated affiant swore to contents of affidavit and also gave oral statements, record must establish oral statements were made under oath); Durham v. State, 471 S.W.2d 527, 529-30 (Ark. 1971) (holding record established affiants swore to contents of affidavits but, because evidence failed to establish they swore to oral statements, those statements could not be considered for purposes of establishing probable cause).

Because no evidence whatever established the house number of the residence to be searched was provided under oath, this information may not be used to establish probable cause to believe that the trailer described in the affidavit bore the address, "101 Virginia Oaks." In the absence of such information, no reasonable officer could have harbored an objectively

- 24 -

reasonable belief, based on the contents of the affidavit, that the magistrate had probable cause to issue the search warrant for the particular numbered residence, "101 Virginia Oaks."

Thus, even assuming we may consider the contents of the criminal complaint sworn to before the magistrate by the same officer as part of the same transaction within approximately thirty minutes prior to issuance of the search warrant, I believe the same result obtains. The criminal complaint directly links appellant to a particular residence *only* by virtue of the fact that the complaint lists appellant's address as "101 Va. Oaks Court." As set out above, however, the affidavit provides no basis whatever for the conclusion that the trailer to be searched is located at *101* Virginia Oaks. Although the affidavit gives a detailed physical description of the trailer, its only reference to the trailer's precise location on Virginia Oaks Court is that the trailer to be searched is the third one on the left. Given the lack of a nexus between the residence described in the affidavit and the one specified in the search warrant, the complaint's indication that appellant, the suspected perpetrator, resided at 101 Virginia Oaks Court is irrelevant for purposes of rehabilitating *the affidavit's* failure to establish a nexus between appellant and the place to be searched. Thus, the contents of the criminal complaint were insufficient to rehabilitate the deficiencies in the affidavit and warrant, and the Commonwealth does not contend otherwise.

Because I would hold the good faith exception does not apply to the search for video and audio tapes, firearms, ammunition, and other items related to the subject murder, I believe the trial court's admission of the ammunition, shoulder holster, and other firearms-related evidence violated the Fourth Amendment.

C.

REVERSIBLE ERROR

The erroneous admission of these items into evidence cannot be said to be harmless under the facts of this case.[8] "When a federal constitutional error is involved, a reviewing court must reverse the judgment unless it determines that the error is harmless beyond a reasonable doubt." Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001).

> In making that determination, the reviewing court is to consider a host of factors, including the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case.

Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (citing Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674, 686-87 (1986)). Whether an error is harmless must be "determined 'without usurping the jury's fact finding function.'" Corado v. Commonwealth, 47 Va. App. 315, 323, 623 S.E.2d 452, 456 (2005) (quoting Hooker v. Commonwealth, 14 Va. App. 454, 457, 418 S.E.2d 343, 345 (1992)).

Here, the Commonwealth's case depended in large part on the testimony of a single eyewitness who testified he saw appellant shoot the victim, accompanied by the testimony of a second witness, who saw appellant at the scene but did not see him fire the fatal shots. The murder weapon was never found, and no ballistics evidence linked appellant to the crime. Other than the eyewitness testimony, the only evidence providing any connection between appellant and the murder weapon was the fact that ammunition of the same brand and caliber had been found in appellant's home, along with a holster and cleaning kit consistent with a firearm of the same type and caliber used to commit the murder. In closing argument, the Commonwealth

---

[8] The Commonwealth has not argued that the admission of the ammunition, holster, and related items, if error, was harmless.

expressly relied on appellant's possession of "ammunition just like what killed the victim" and a holster and cleaning kit "consistent with the caliber that claimed the victim" as evidence that corroborated the eyewitness testimony and helped to prove appellant's guilt. Under these circumstances, we cannot conclude, without usurping the jury's fact finding function, that the error was harmless beyond a reasonable doubt.

III.

For these reasons, I would hold the search conducted pursuant to the invalid warrant was unreasonable and that the trial court's refusal to suppress the fruits of that search was reversible error. Because the evidence appellant challenged as hearsay was relevant only as a result of an item, a shoulder holster, found during the unreasonable search, I would hold this issue is moot and that we need not consider it in this appeal. Finally, because the court's erroneous denial of the motion to suppress cannot be said to be harmless error on the facts of this case, I would reverse appellant's convictions and remand for a new trial. Thus, I respectfully dissent.