COURT OF APPEALS OF VIRGINIA

Present: Judges Callins, White and Bernhard
Argued at Williamsburg, Virginia


ADAM MICHAEL SULLIVAN

MEMORANDUM OPINION[*] BY
v.          Record No. 1359-24-1                    JUDGE DOMINIQUE A. CALLINS
                                                    OCTOBER 28, 2025
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Kevin M. Duffan, Judge

Taite A. Westendorf (Brian M. Latuga; Westendorf & Khalaf,
PLLC; Wolcott, Rivers, Gates, on briefs), for appellant.

Jason D. Reed, Senior Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Upon his conditional guilty pleas, the circuit court convicted Adam Michael Sullivan of

several offenses, including one count of possessing child pornography, first offense, and four

counts of possessing child pornography, second or subsequent offense. The court sentenced him

to a total of 31 years and 90 days of incarceration, with all but 8 years suspended. On appeal,

Sullivan asserts that the circuit court erred in denying his motion to suppress evidence obtained

during a search of his laptop computer and thumb drive. For the following reasons, we affirm

the circuit court's judgment.

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND

Virginia Beach Police Officers Pringle and Harrington were patrolling a block of Holland Road in a marked police vehicle when one of the officers noticed Sullivan's pickup truck, which appeared to have sustained "heavy front end damage," parked in a shopping center lot. The officers suspected that that the vehicle may have been involved in a recently-reported hit-and-run accident due to the "fresh" look of the damage. They decided to investigate further.

As the officers turned into the parking lot, Officer Harrington noticed Sullivan quickly backed out of his parking space and immediately exited. The officers followed Sullivan as he drove a short distance from the shopping center parking lot to a nearby convenience store. Once Sullivan parked, the officers did the same. They then exited their vehicle to approach Sullivan, who remained in his truck.

Officer Harrington expected to initiate "consensual contact" with Sullivan. Yet as he approached the truck, Harrington observed that the truck had an expired inspection sticker, no front bumper, and no front license plate. According to Harrington, "at that point[,] the consensual encounter turned into a traffic stop." He approached the driver's side window and asked Sullivan, the sole occupant of the truck, for his driver's license. Sullivan did not produce a driver's license but instead provided his personal information.

As Officer Pringle ran Sullivan's personal information, Officer Harrington continued conversing with Sullivan. During the conversation, Harrington observed a clear baggie of pills in the center console of the truck. Sullivan told Harrington that the pills were Adderall, for which he had a valid prescription.

Sullivan did not, however, have a valid driver's license. The check of his personal information also revealed that Sullivan had prior convictions for driving without a license and that he was a "registered felon" and a violent sexual offender. Officer Harrington informed Sullivan that

he was being cited for driving without an operator's license, second or subsequent offense, and that, pursuant to statute, the police would impound his truck. Harrington further informed Sullivan that pursuant to department policy, the police would perform an inventory of the vehicle prior to towing it. Before starting the inventory, the officers allowed Sullivan to retrieve his laptop from the truck.

During the inventory, Officer Harrington discovered a plastic baggie containing what appeared to be methamphetamine residue, along with additional baggies, hypodermic syringes, scales, several glass pipes, two cell phones, ammunition, casings, and a 12-inch machete.

Sullivan was placed under arrest on suspicion of possession of a Schedule I or II drug and possession of ammunition by a convicted felon. After being informed of his *Miranda*[1] rights, Sullivan volunteered to police that he began using methamphetamine when, "[d]ue to COVID," his Adderall prescription lapsed. Sullivan consented to a "limited search"[2] of his cell phone and stood next to Officer Harrington while the officer scrolled through his phone messages. This consensual search revealed information in text and social media messages indicating that Sullivan used methamphetamine and sold Adderall. Sullivan explained that of the other two phones found during the inventory of his truck, one belonged to his girlfriend, and the other was his previous phone which was broken and "completely blank."

About a week after Sullivan's arrest, Officer Pringle applied for a warrant to search Sullivan's laptop for "text messages, emails, images, Internet records, documents, files[,] and deleted files containing evidence" relating to the "purchasing/distribution of illegal narcotics and possession of ammunition/firearms." In the supporting affidavit, Officer Pringle stated that

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[2] Officer Harrington testified at the suppression hearing that a "limited search" referred to the officer "not look[ing] through the entire [phone] . . . basically he would direct me" into which phone applications a detainee permitted the officer to access. Officer Harrington affirmed that Sullivan had not expressly limited his search but rather that Harrington himself voluntarily limited the extent of his review of the phone at that time.

"Sullivan was a registered felon and violent sex offender." The affidavit also stated that during the inventory of the truck, the officers found "9mm and .40 caliber ammunition" and a "large machete . . . concealed between the driver's seat and the center console." They also "located a plastic baggy containing crystal substance and other narcotics paraphernalia." The affidavit stated that Sullivan was arrested for being a "felon in possession of ammo and possession of methamphetamine." The affidavit further stated that, based on his training and experience, Officer Pringle "believe[d] that there [was] evidence of narcotic, firearm, and ammunition transactions on all electronic devices found in Sullivan's possession" and that "[e]lectronic files remain in place until overwritten" and "[f]orensic examination can recover files months and even years after being deleted."

Upon obtaining an authorizing warrant, Officer Pringle began searching the laptop. Yet shortly after he began, Pringle encountered files containing "sexually graphic titles that referenced children." Officer Pringle immediately discontinued his search and obtained a second search warrant for the laptop, as well as for a thumb drive later discovered in Sullivan's laptop case. A full analysis of the laptop revealed 505 accessed files, folders, or websites indicative of child exploitation. An analysis of the thumb drive revealed 168 child pornography videos and almost 8,000 child pornography images.

Ultimately, the Commonwealth charged Sullivan with one count each of possessing child pornography, first offense; possessing methamphetamine; possessing ammunition as a convicted felon; and driving without an operator's license; and four counts of possessing child pornography, second or subsequent offense. Sullivan moved to suppress the evidence obtained as a result of the initial search warrant, asserting that it was not supported by probable cause. The circuit court held a hearing on Sullivan's motion.

At the hearing, both officers testified. Officer Pringle confirmed that he was present for all of Sullivan's conversations with Officer Harrington prior to and immediately after Sullivan's arrest and that he and Officer Harrington discussed the evidence recovered from Sullivan's truck before Pringle swore out the probable cause affidavit. Officer Pringle further testified that he had initially applied for one warrant to cover all four devices found in the truck. The magistrate, however, instructed Pringle to submit separate applications for the laptop and for each cell phone.

Officer Pringle testified that he had been in Virginia Beach law enforcement for close to nine years, with experience in narcotics and violent crimes. In his experience, individuals who possess firearms or ammunition commonly photographed or recorded themselves with those items, even when they were prohibited from possessing them. Although he did not frequently encounter laptops during arrests, Pringle observed that "the Cloud has everything, and typically those sync up to laptops" and that "[l]aptops can have search -- internet history and stuff like that, with photos, videos," causing Pringle to believe that Sullivan's laptop might contain such evidence. According to his testimony, Officer Pringle also believed Sullivan's laptop could contain evidence of Sullivan's methamphetamine use and Adderall distribution, based on information discovered through Officer Harrington's search of Sullivan's phone. When the magistrate issued the warrant, Officer Pringle considered it "a valid search warrant."

On cross-examination, Officer Pringle confirmed that he did not provide to the magistrate any information beyond that contained in the affidavit. He acknowledged that the affidavit did not reference the narcotics-related communications that Officer Harrington found in Sullivan's phone. He further acknowledged that he did not know whether Sullivan's phone was connected to the laptop, or whether the laptop was connected to a Cloud-based storage service or Sullivan's

email account.  Officer Pringle did not know whether Sullivan in fact had any social media accounts.

At the conclusion of the evidence, the parties made their arguments.  Sullivan argued that the initial warrant was invalid because the facts in the affidavit did not establish a sufficient nexus between the laptop and criminal activity, so there was no "fair probability" that evidence of the enumerated crimes would be found there.  He also contended that the good faith exception to the exclusionary rule did not apply.  The Commonwealth responded that, given the evidence found in Sullivan's car and on his phone, the officers reasonably concluded that the laptop might contain evidence of narcotics or possession of ammunition offenses.  The Commonwealth further argued that, even if the warrant was not supported by probable cause, suppression was not an appropriate remedy because Officer Pringle relied on the warrant in good faith.

After continuing the hearing to allow the parties to submit additional briefing, the circuit court ruled on Sullivan's motion.  The court expressed some skepticism regarding whether the facts asserted in the affidavit established a sufficient nexus between the drug and ammunition items and the electronic devices: "Getting from the defendant to the cell phone then to the laptop, there are a couple of steps that needed to happen there."  Nonetheless, considering the "great deference" owed the issuing magistrate, the circuit court concluded "that there is at least some indicia of probable cause that's listed in the search warrant affidavit itself," and thus, "the issuance of that search warrant for the laptop was proper."  Drawing its reasoning from *Anzualda v. Commonwealth*, 44 Va. App. 764 (2005) (en banc), the circuit court held, alternatively, that "[t]he good faith exception would apply when . . . the officer executing the warrant reasonably believed that the warrant was valid."  The circuit court denied Sullivan's motion to suppress the evidence of the laptop and the thumb drive.

Sullivan entered a conditional guilty plea to all charges. The circuit court accepted his plea and entered convictions against him, including for possession of child pornography. Sullivan now appeals.

ANALYSIS

A defendant's "claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that we review *de novo* on appeal." *Baskerville v. Commonwealth*, 76 Va. App. 673, 684 (2023) (quoting *King v. Commonwealth*, 49 Va. App. 717, 721 (2007)). We defer to the circuit court's factual findings, reviewing them only for clear error and "giv[ing] due weight to inferences drawn from those facts by resident judges and local law enforcement officers." *Commonwealth v. Hubbard*, ___ Va. ___, ___ (Sept. 11, 2025) (quoting *Commonwealth v. White*, 293 Va. 411, 414 (2017)). But we "independently decide whether, under the applicable law, the manner in which the challenged evidence was obtained satisfies constitutional requirements." *Baskerville*, 76 Va. App. at 684 (quoting *Shifflett v. Commonwealth*, 47 Va. App. 141, 145-46 (2005)). Ultimately, Sullivan "bears the burden to show that the [trial] court committed reversible error by denying [his] motion to suppress." *Ayala v. Commonwealth*, 79 Va. App. 41, 49 (2023) (alterations in original) (quoting *Keepers v. Commonwealth*, 72 Va. App. 17, 33 (2020)).

Sullivan challenges the circuit court's ruling denying his motion to suppress the evidence obtained from his laptop and thumb drive on two grounds. First, he argues that Officer Pringle's affidavit failed to establish probable cause to search his laptop because it "lacked any facts linking the laptop to illegal activity." Although the affidavit mentions that the officers found the laptop in Sullivan's vehicle alongside the drugs and ammunition, he contends that it does not suggest that his criminal activity was "connected to the laptop in any way." Second, Sullivan argues that the good faith exception does not salvage the invalid warrant because the affidavit "complete[ly] lack[ed] . . .

any indicia of probable cause." Assuming without deciding that the warrant lacked probable cause, we hold that the good faith exception properly applies here.[3]

Under the Fourth Amendment "no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." *Wolfe v. Commonwealth*, 67 Va. App. 97, 102 (2016) (alterations in original) (quoting U.S. Const. amend. IV). "Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Harvey v. Commonwealth*, 76 Va. App. 436, 462 (2023) (quoting *Jones v. Commonwealth*, 277 Va. 171, 178 (2009)). "[T]he existence of probable cause is determined by examining the totality-of-the-circumstances." *Taylor v. Commonwealth*, 66 Va. App. 619, 635 (2016) (alteration in original) (quoting *Anzualda*, 44 Va. App. at 774). "Probable cause relies on a 'flexible, common-sense standard' . . . that does not 'demand any showing that such a belief be correct or more likely true than false.'" *Slayton v. Commonwealth*, 41 Va. App. 101, 106 (2003) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)). "When determining whether probable cause exists, the magistrate may draw reasonable inferences from the material supplied" in the affidavit. *Anzualda*, 44 Va. App. at 775.

Evidence seized pursuant to a warrant is not automatically suppressed if such warrant is later deemed invalid. *See Collins v. Commonwealth*, 297 Va. 207, 212 (2019). "The exclusionary rule is a self-limiting, 'prudential' doctrine whose 'sole purpose . . . is to deter future Fourth Amendment violations.'" *Id.* at 214 (alteration in original) (quoting *Davis v. United States*, 564 U.S. 229, 236-27 (2011)). It "is not an individual right" but "applies only where it 'result[s] in appreciable

---

[3] We address only the application of the good faith exception because this represents the best and narrowest grounds on which to decide this case. *See Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) ("As we have often said, 'the doctrine of judicial restraint dictates that we decide cases "on the best and narrowest grounds available."'" (quoting *White*, 293 Va. at 419)).

deterrence'" of future Fourth Amendment violations. *Herring v. United States*, 555 U.S. 135, 141 (2009) (alteration in original) (quoting *United States v. Leon*, 468 U.S. 897, 909 (1984)). Accordingly, the rule does not preclude evidence obtained pursuant to an invalid warrant "if the police acted 'in objectively reasonable reliance'" on it. *Id.* at 142 (quoting *Leon*, 468 U.S. at 922). We commonly refer to this "objectively reasonable reliance" as the "good faith exception" to the exclusionary rule.

The test employed in a good faith analysis is "considerably different" from that of probable cause in that it is "a significantly lesser standard than a showing of a 'substantial basis' for upholding a magistrate's determination of probable cause." *Adams v. Commonwealth*, 275 Va. 260, 274 (2008). Unlike a probable cause review, where a court may consider only "those sworn, written facts stated in the search warrant affidavit," a good-faith analysis considers the totality of the circumstances, "including what [the executing police officers] knew but did not include in [the] affidavit." *Id.* at 270 (alterations in original) (quoting *United States v. Martin*, 833 F.2d 752, 756 (8th Cir. 1987)). This contrasting approach serves to "deter police misconduct rather than to punish the errors of judges and magistrates." *Id.* at 272 (quoting *Leon*, 468 U.S. at 916).

We have previously recognized courts as properly rejecting good faith and suppressing evidence in four circumstances:

> (1) Where the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

*Colaw v. Commonwealth*, 32 Va. App. 806, 811 (2000) (quoting *Atkins v. Commonwealth*, 9 Va. App. 462, 464 (1990)). Sullivan argues that the third circumstance applies because Pringle's

"bare bones" affidavit did not offer *any* indicia of probable cause.  He contends that Officer

Pringle proffered no facts connecting Sullivan's laptop to his criminal activity.  We disagree.

Considering the totality of the circumstances, we cannot say that the affidavit is so lacking

indicia of probable cause as to render reliance on the search warrant unreasonable.  First, the

affidavit, which specifically described the items sought, the place to be searched, and the

transaction which prompted the warrant, was not "bare bones."  *Anzualda*, 44 Va. App. at 782

("[A] 'bare-bones' affidavit . . . merely sets forth conclusory allegations with no recitation of the

facts supporting those conclusions.").  The affidavit stated that the officers sought

"[e]lectronically stored records . . . not limited to but including text messages, emails, images,

Internet records, documents, files[,] and deleted files containing evidence which relate to the

purchasing/distribution of illegal narcotics and possession of ammunition/firearms."  It stated

that such items were expected to be found on a "Black Sony Vaio laptop . . . in a black laptop

case."  The affidavit detailed the traffic stop where the officers discovered Sullivan's drugs,

implements of drug distribution, and illegal ammunition.  It also detailed the arrest and

confiscation of the laptop incident to arrest.

Second, the affidavit asserted why the officers sought to search the laptop and described

the type of evidence sought.  Officer Pringle attested to his training and experience in narcotics

and ammunitions investigations and his knowledge of the relationship between guns, drugs,

social media accounts, and electronic devices.  Further, Officer Pringle knew that Sullivan's

phone contained evidence he had communicated with another to sell Adderall and that Sullivan

pulled the laptop out of the truck where the officers later found additional evidence of crime,

including two cell phones.  At the suppression hearing, both officers testified to their awareness

of laptops serving as backup sources for internet browser histories and cell phone photograph

and video storage.  *See Adams*, 275 Va. at 270 (considering "'the totality of the circumstances

including what [the executing police officers] knew but did not include in [the] affidavit' when conducting the good-faith analysis" (alterations in original) (quoting *Martin*, 833 F.2d at 756)). These facts suggest a nexus between Sullivan's criminal activity and his laptop. *Cf. Janis v. Commonwealth*, 22 Va. App. 646, 653 (1996) ("The affidavit gave absolutely no indication that the fruits of criminal activity would probably be found at that location, rendering [the officer's] belief in probable cause, *based solely on the affidavit*, *objectively unreasonable*.").

Third, the affidavit provided facts that demonstrated that the items sought could be found at the location specified. Sullivan's reliance on *Colaw* is misplaced. There, an officer obtained a search warrant based on third-party allegations that there would be drug use at an upcoming party and, upon executing the warrant, discovered the appellant with drugs. *Colaw*, 32 Va. App. at 809-10. On appeal, this Court reversed the trial court's application of the good faith exception. We held that an officer "could not reasonably have believed that the warrant was properly issued when it was based on a 'bare bones' affidavit that contained only conclusory assertions by a third-party informant about a future event without supporting facts to constitute probable cause." *Id.* at 813. Conversely, Officer Pringle's affidavit resulted from his and Harrington's own investigation, observations, knowledge, and experience after interviewing Sullivan and inventorying Sullivan's truck. Even if insufficient to establish a "substantial basis" for probable cause, we stop short of holding that belief of these facts requires "blindly accepting the [officer's] conclusory statement[s]"; there is at least some indicia of probable cause. *Id.* at 814.

In sum, the affidavit was not "'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable." *Anzualda*, 44 Va. App. at 780 (quoting *Colaw*, 32 Va. App. at 811). Accordingly, we hold that the circuit court did not err in applying the good faith exception and thus denying Sullivan's motion to suppress the evidence seized from his laptop.

## CONCLUSION

For the foregoing reasons, we affirm the circuit court's judgment.

*Affirmed.*

Bernhard, J., dissenting.

I respectfully dissent from the majority's reliance on the good-faith exception to uphold the search of Sullivan's laptop. The search warrant affidavit contains no facts establishing a nexus between the laptop and any criminal activity. The magistrate issued the warrant solely on the affiant, Officer Pringle's, assertion that, based on his "training and experience," the device might contain incriminating evidence. The majority concludes the officer's reliance on this warrant was "objectively reasonable." *See supra* at 9, 11. But that conclusion is unsustainable because the affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (quoting *Brown v. Illinois*, 422 U.S. 590, 611 (1975)). By extending the good-faith exception to a warrant lacking any factual nexus, the majority departs from the limits articulated in *Leon*. When magistrates issue warrants on the basis of facts unconnected to any direct knowledge or suspicion of criminal wrongdoing encompassing the device or place to be searched, and courts uphold those warrants under the good-faith exception, the magistrate's essential gatekeeping function is diminished, and the warrant requirement risks becoming a mere procedural formality rather than a meaningful constitutional safeguard.

*I. The search warrant affidavit did not establish probable cause that Sullivan's laptop contained evidence of a crime.*[4]

"For a search warrant to be supported by probable cause, 'the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched.'" *Cunningham v. Commonwealth*, 49 Va. App. 605, 613 (2007) (quoting *United States v. Lalor*, 996 F.2d 1578, 1582 (4th Cir. 1993)). The search warrant affidavit submitted to the magistrate by Officer Pringle offered nothing beyond a conclusory statement that "electronic devices" might hold evidence: "Based on this affiant's training and experience with narcotics, narcotics transactions, social media and electronic devices, and persons prohibited from possessing firearms and ammunition, this affiant believes that there is evidence of narcotic, firearm, and ammunition transactions on all electronic devices found in Sullivan's possession." That speculative assertion "is not sufficient *by itself* to provide a basis for probable cause. The officer's statements of

---

[4] The majority, invoking judicial restraint, assumes without deciding that probable cause was lacking, thus declining to resolve the issue directly. *Supra* at 8. "The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010)). Nevertheless, while the majority's approach may be the narrowest, it is not necessarily the best.

> The "best" answer to a legal question is the one with which the least number of jurists would disagree or, in other words, the one with which the greatest number of jurists would agree. The "narrowest" answer to a legal question is the one affecting the least number of cases.

*Butcher v. Commonwealth*, 298 Va. 392, 396 (2020). Here, there can be little disagreement that probable cause to search the laptop was lacking, so the "best" holding does not justify the "narrowest." In addition, the majority's chosen course carries several disadvantages. It "does not foreclose a future review of [the] constitutional issue and, moreover, does not bind those— here, potentially the Commonwealth—subject to the court's jurisdiction to the effect of [the] decision." *Luginbyhl v. Commonwealth*, 48 Va. App. 58, 64 (2006). Furthermore, it does not clearly instruct the magistrate that the warrant lacked probable cause, thereby failing to prevent repetition of the same error.

experience set forth *generalizations* about the behavior of drug users and distributors, rather than specific facts." *Sowers v. Commonwealth*, 49 Va. App. 588, 597 (2007) (emphases added).

A warrant is sound only to the extent of the facts presented in an officer's affidavit. The affidavit here fails to support the warrant. Officer Pringle recited the police had found drugs, paraphernalia, ammunition, three phones, and a laptop, among other items. From this, the affiant asserted, based solely on "training and experience," that evidence of drug and ammunition transactions would be present on "all electronic devices."[5] "[T]he circumstances set forth in the affidavit" here do not impart the required "*fair probability* that contraband or evidence of a crime will be found in a particular place." *See Illinois v. Gates*, 462 U.S. 213, 238 (1983) (emphasis added).

Both of the involved police officers admitted in court they had no information linking the laptop to the phones and never asked Sullivan about the device, and the affiant conceded he had "no knowledge" whether the laptop contained evidence. The trial court aptly described what is obvious from the record, the absence of probable cause for the laptop search warrant:

> In this case, the facts were awfully thin to the point of being nonexistent by Officer Pringle's own testimony that there was nothing that pointed to the laptop other than, [w]e just think somebody who has a phone probably backs up their information to the laptop, and he had this laptop.

*II. The good-faith exception does not apply.*

The Commonwealth argues the good-faith exception rescues this defective warrant from the suppression remedy. Virginia precedent makes clear that speculation cannot substitute for the evidentiary interconnection required for objectively reasonable reliance on such a warrant. "A *factual* nexus must connect the illegal activity to the place to be searched." *Sowers*, 49

---

[5] While factually unlinked to the laptop and thus not of legal import, the affidavit omitted mention of incriminating phone texts that had already been reviewed by the police.

Va. App. at 597. "Police officers[] . . . cannot reasonably rely on a 'bare-bones' affidavit that sets forth only conclusory allegations without supporting facts" and which is "merely suppositive." *Cunningham*, 49 Va. App. at 619-20. Reliance on such an affidavit is objectively unreasonable. *See Colaw v. Commonwealth*, 32 Va. App. 806, 814 (2000) ("Only by blindly accepting the informant's conclusory statement could one believe that drugs would be at the residence.").

Affidavits with at least "some indicia" of probable cause are required to support reliance in good faith on a warrant lacking probable cause. *Anzualda v. Commonwealth*, 44 Va. App. 764, 782 (2005) (en banc) (qualifying indicia were found where "the underlying affidavit describe[d] with particularity the item sought, the place to be searched, and the transaction that led the police to believe that the item sought would have been found at the place to be searched"). Although the good-faith threshold is lower than probable cause, it still demands case-specific facts. *See, e.g.*, *Adams v. Commonwealth*, 275 Va. 260, 275 (2008) (holding the good-faith exception applied where the affidavit described the residence to be searched and the items sought, recounted the victim had been shot at the location, and only left out the word "Court" from the complete street name of the location).

The majority notes "Officer Pringle also believed Sullivan's laptop could contain evidence of Sullivan's methamphetamine use and Adderall distribution, based on information discovered through Officer Harrington's search of Sullivan's phone." *Supra* at 5. But the majority concedes

> Officer Pringle confirmed that he did not provide to the magistrate any information beyond that contained in the affidavit. He acknowledged that the affidavit did not reference the narcotics-related communications that Officer Harrington found in Sullivan's phone. He further acknowledged that he did not know whether Sullivan's phone was connected to the laptop, or whether the laptop was connected to a Cloud-based storage service or

- 16 -

> Sullivan's email account. Officer Pringle did not know whether
> Sullivan in fact had any social media accounts.

*Supra* at 5-6.

The speculative assumption Sullivan's laptop would contain evidence of drug

transactions finds no support in caselaw; as Professor Gershowitz has explained, cell phones,

rather than laptops, are the recognized tools of drug distribution:

> [D]rug dealers are much more likely to transact business with cell
> phones than traditional computers. Drug distribution is typically a
> street crime and drug dealers utilize the mobility of phones and the
> instant communication of text messages to arrange sales of their
> products. There are many reported decisions in which law
> enforcement officials convinced courts that cell phones are
> recognized tools of the drug trade. Indeed, prior to *Riley* [*v.
> California*, 573 U.S. 373 (2014)], the Drug Enforcement
> Administration specifically trained its agents to search cell phones
> incident to arrest without a warrant. Conversely, *it is practically
> impossible to find courts claiming that traditional computers are
> used for drug transactions*.

Adam M. Gershowitz, *The Post-Riley Search Warrant: Search Protocols and Particularity in*

*Cell Phone Searches*, 69 Vand. L. Rev. 585, 631 (2016) (emphasis added).

Nothing in the facts known to police or in the averments of the warrant affidavit provided

laptop-specific evidence. Whether in the affidavit or in testimony, there was no claim the device

was used for drug communications, no observation of incriminating content, no indication it

synced with the phones, and no suggestion it accessed contraband accounts. The sole asserted

nexus rested on the generic suggestion that "electronic devices" might contain evidence or

backups, an inference the affiant conceded he did not know to be true.

Where, as here, the affiant admitted to "no knowledge" of any nexus between criminal

activity and the laptop, his circular reliance on a magistrate's warrant likewise grounded in "no

knowledge" cannot be objectively reasonable.

CONCLUSION

For the foregoing reasons, I would reverse the judgment of the trial court and remand with instructions to suppress the laptop evidence.[6]

> [T]he Fourth Amendment was the founding generation's response to the reviled "general warrants" and "writs of assistance" of the colonial era, which allowed British officers to rummage through homes in an unrestrained search for evidence of criminal activity. Opposition to such searches was in fact one of the driving forces behind the Revolution itself.

*Riley*, 573 U.S. at 403. "Modern cell phones are not just another technological convenience. With all they contain and all they may reveal, they hold for many Americans 'the privacies of life.'" *Id.* (quoting *Boyd v. United States*, 116 U.S. 616, 630 (1886)).

*Riley* grounded its analysis in the longstanding principle that privacy protections must adapt to new forms of intrusions. *See* 573 U.S. at 403. Although the decision directly addressed only cell phones, its concern with the unprecedented breadth and depth of digital information applies in some measure to laptops and tablets as well. To the extent those devices similarly serve as digital extensions of personal life, *Riley's* reasoning underscores the need for robust constitutional safeguards. Permitting searches of such devices without the safeguards *Riley* recognized would risk the gradual erosion of core constitutional protections, for as *Boyd* cautioned, "illegitimate and unconstitutional practices get their first footing . . . by silent approaches and slight deviations from legal modes of procedure. . . . It is the duty of courts to be

---

[6] Found in the laptop case was a thumb drive. I would include in the remand instructions that evidence also be suppressed as derivative, subject to the Commonwealth's right to seek to establish attenuation. "Attenuation" refers to a legal doctrine under which evidence is deemed admissible if the connection between unconstitutional police conduct and the evidence obtained is sufficiently remote or has been interrupted by some intervening circumstance. This principle is applied to determine whether the evidence is purged of the taint of the initial illegality, thereby making it admissible despite the prior unconstitutional act. *Baskerville v. Commonwealth*, 76 Va. App. 673, 692-94 (2023).

watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon." *Boyd*, 116 U.S. at 635.